BELVA B. DYE

*v.*

PENNSYLVANIA CASUALTY COMPANY

(No. 9724)

Submitted September 25, 1945. Decided November 6, 1945.

*Wm. S. Ryan,* for plaintiff in error.
*Harper & Baker,* for defendant in error.

RILEY, JUDGE:

Belva B. Dye instituted in the Circuit Court of Roane County this action of assumpsit against Pennsylvania Casualty Company, a corporation, to recover $250.00 upon a hospital surgical operation under an indemnity insurance policy.

Defendant's demurrer to the declaration having been overruled, defendant filed a plea of non-assumpsit and a plea of the general issue under Code, 56-4-21, supported by a "Statement of Particulars of Defense" specifying:

(1) Fraud in the procurement of the policy by falsely answering in her application "Yes" to question number 8: "Are you now in good health and free from any mental or physical impairment or deformity?" And "No" to the question numbered 9: "Have you had any sickness or injury or received any medical or surgical advice or treatment in the past five (5) years?" The statement of particulars further states that the insured agreed in answer to question numbered 12 of the application that the falsity of any answer in the application would bar recovery and the policy should not become effective until the application was approved by the in-

surer and the policy accepted by the plaintiff wholly in good health and free from any injury.

(2) Said falsity of plaintiff's answers to questions 8 and 9 of the application, without any allegation of fraud, and insured's agreement contained in her answer to question number 12.

In answer to defendant's "Statement of Particulars of Defense" plaintiff filed a plea designated "plea of estoppel and waiver" stating that if any of the matters of defense set forth in the statement of particulars ever existed they were fully known to defendant on or prior to March 18, 1943; that on or after March 18, 1943, defendant accepted from plaintiff payment of the insurance premium owing on account of the policy which served to continue the policy in force after March 18, 1943; that by reason of the acceptance of said premium, any untrue statements made by plaintiff in the policy were waived and defendant is estopped from claiming that the policy was not in force at the time plaintiff was operated upon and incurred the surgical and hospital expenses set forth in her declaration and bill of particulars.

The Circuit Court overruled the defendant's demurrer to plaintiff's "plea of estoppel and waiver". Whereupon defendant replied generally to the plea. At the completion of the evidence on the second trial, the first trial having resulted in a hung jury, the court sustained plaintiff's motion to strike out that part of the defendant's evidence relating to the items contained in the statement of the particulars of defense except as to question number 8 in the application and that a verdict for plaintiff be directed in the amount paid by her for the operation and hospital expenses as shown by the evidence.

The court sustained this motion and directed a verdict for the plaintiff in the amount of $185.00 and entered judgment for plaintiff in that amount, to which judgment defendant prosecutes this writ of error.

On February 4, 1941, plaintiff made written application to the Pennsylvania Casualty Company for a hospitalization and medical expense policy, on the strength of which defendant issued to plaintiff a policy dated February 10, 1941, designated "HOSPITAL AND SURGICAL OPERATION EXPENSES INDEMNITY POLICY" which purported to insure defendant "against loss due to expense incurred through hospitalization and/or surgical operation resulting * * * through disease,". The application, which contains questions numbered eight, nine and twelve, and the answers thereto, as set forth in defendant's particulars of defense, was attached to the policy and made a part thereof.

Plaintiff paid the first premium due at the issuance of the policy and the subsequent premiums were paid by T. W. Dye, plaintiff's husband. By check dated March 18, 1943, and payable to the order of Kanawha Valley Insurance Agency, defendant's agent, Dye paid a quarterly premium in the amount of $6.60 which served to continue the policy until July 1, 1943. On August 11, 1943, the Kanawha Valley Insurance Agency addressed a letter to plaintiff enclosing a check for $32.90 "as a refund of all premiums tendered under" the policy. This letter reads in part: "We learned that the question on your application which reads, 'Are you now in good health and free from any mental or physical impairment or deformity?' was answered incorrectly. According to our information, you were not in good health at the time the application for this insurance was completed." Mark Bird, an employee of the Kanawha Valley Insurance Agency, testified that the defendant first learned that "the questions answered by Mrs. Dye were incorrectly answered" from a partly completed claim blank which was received on April 29, 1943.

The record discloses that Mrs. Dye was examined at Staats Hospital in Charleston by Doctors Beddow and Frank, either in September or October, 1938. They found a soreness under the right ribs, right shoulder blade and under the right upper arm in the region of the gall

bladder, which, in their opinion, indicated an X-ray. An X-ray having been taken it disclosed some deformation of the gall bladder which was causing a delay in emptying, but neither physician advised an operation. In February, 1939, plaintiff was again examined by Dr. Frank, who found the liver sensitive on pressure but no lesions of the gall bladder. At that time she complained of nervousness, sour stomach, and sorenes in the region of the stomach. Upon an examination two months later Dr. Frank found soreness of the right ribs, right back and the liver. On March 4, 1940, plaintiff complained to Dr. Frank of pains in the pit of the stomach as well as shortness of breath in climbing stairs. On this visit Dr. Frank found that plaintiff's general condition was good, but that the gall bladder was tender. Two X-rays were taken. The one covering the gall bladder region showed the bladder to be normal, except for delay in emptying. No stone or ulcer was discovered. The X-rays covering the stomach area showed no ulcer in the duodenum.

On March 11, 1940, Dr. Frank wrote to Dr. Bull of Spencer, West Virginia, stating: "I have come to conclusion that patient suffers from chronic disease, but no stone and no adhesions have been found, therefore, I do not recommend operation". Dr. Frank further testified at the trial that he did not discover sufficient evidence of chronic gall bladder disease to justify an operation.

It was the following February that the instant policy of insurance was issued to plaintiff.

Thereafter, on June 23, 1941, she visited Dr. Goff at Parkersburg; an X-ray of the gall bladder was taken which disclosed no pathology. A second X-ray covering the stomach area revealed no pathological ulcer. Dr. Goff concluded that the symptoms of gas on stomach and indigestion, of which plaintiff complained, were due to errors in diet and prescribed a diet. On September 24, 1941, plaintiff was again examined by Dr. Frank, who found her generally in good condition, except that the abdomen was slightly distended and there was soreness

in the region of plaintiff's liver and the lower right part of the chest. He then advised an X-ray. On cross-examination he testified "she never had any strict evidence of stone in gall bladder"; that the delayed discharge from the bladder was of minor importance and is usually treated medically.

On February 22, 1943, plaintiff returned to Dr. Goff with an X-ray film, made in Akron, Ohio, which showed pathology of the gall bladder. Dr. Goff testified that sufficient time had elapsed since his first examination on June 23, 1941, to permit the development of the condition which required the operation. In addition to the foregoing plaintiff's family physician, a Dr. Bull, testified that plaintiff complained to him of pain in the region of the gall bladder but that, without making a diagnosis, he sent her to Dr. Frank.

The representation contained in the answer to question number 8 of the application to the effect that at the time insured was in "good health and free from any mental or physical impairment or deformity" must be viewed in the light of the evidence contained in this record for the purpose of determining whether it concerned matters of fact rather than of opinion. The numerous times that plaintiff submitted to medical examination prior to making the application for insurance, and her many complaints to the examining physicians on the occasion of those examinations, indicates to us that at the time she signed the application she knew, as a matter of fact, that she was not in good health. And her answer to question number 9 of the application involved matters so completely within her personal knowledge that it necessarily was a misrepresentation of fact. Both these representations, especially when they are coupled with the answer to question number 12 of the application, in which insured expressly agreed that the "falsity of any answer therein shall bar right to recovery * * *" and the "policy shall not become effective until * * * it is accepted by the plaintiff wholly in good health and free from any injury" are material and in

the absence of waiver or estoppel serve to vitiate the policy. In *Stockton* v. *Continental Life Insurance Company*, 105 W. Va. 240, 141 S. E. 878, this Court held that false statements, although made in good faith, representing material matter as true, without knowledge thereof, will avoid a policy of life insurance. Of course a mistake in the expression of an opinion in an answer to a question in an application for a life policy will not vitiate the policy, where the expression of opinion is made in good faith. *Layfield* v. *Jefferson Standard Life Insurance Company*, 120 W. Va. 564, 199 S. E. 450. We simply say here that under the facts portrayed by this record plaintiff could have labored under no mistake as to the condition of her health at the time the policy was issued and surely she is in no position to effectively say that she did not know of or did not remember her numerous visits to the offices of physicians where she received medical and surgical advice.

But counsel for plaintiff say, as is alleged in the "plea of estoppel and waiver" that the matters of defense set forth in the statement of particulars were fully known to defendant on March 18, 1943, the date upon which defendant accepted the last premium paid under the policy. The record, however, clearly shows that defendant had no knowledge as to the falsity of the answers contained in the application until April 29, 1943, which knowledge was only partial and caused defendant to promptly engage in an investigation which was not completed until about the time the letter of August 11, 1943, returning the premiums, was written. In the absence of knowledge, defendant was not in a position where it could make a waiver or create an estoppel. "Waiver is the voluntary relinquishment of a known right". "An estoppel exists when the insurer has brought about or allowed such conditions as make it inequitable for him to claim a right to which he would otherwise be entitled. A waiver is recognized to give effect to the intention of the party waiving, while an estoppel is enforced in order to defeat the fraudulent intention of the party estopped". Vance on Insurance, p. 343.

For the foregoing reasons the judgment of the Circuit Court is reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial ordered.*