FIRST DIVISION

February 26, 2001

No. 1-99-0541

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

RODOLFO NUNEZ,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

James B. Linn,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

On October 21, 1998, defendant, Rodolfo Nunez, was charged with two counts of first degree

murder and two counts of felony murder predicated on aggravated battery for the murder of Ricky Barrios which occurred on May 8, 1993.  Following a bench trial, defendant was found guilty of the lesser included offense of aggravated battery.  The trial court sentenced defendant to 54 months of

imprisonment.  The issue in this case is whether defendant's conviction for aggravated battery 

violates the statute of limitations.  The lesser included offense of aggravated battery occurred on May 8, 1993, more than five years before defendant was indicted on October 21, 1998.  We conclude that defendant was improperly subjected to criminal liability when the trial court found the defendant guilty of aggravated battery.  Under the facts of this case, the finding of guilty of aggravated battery was barred by the statute of limitations.

BACKGROUND

Tommy Gonzalez testified at trial that in May of 1993 he did not belong to any gang, but he

"hung around with" the Latin Kings.  In the early morning of May 8, 1993, Gonzalez was "hanging

out" with some Latin Kings on Evergreen Avenue, between Spaulding Avenue and Homan Avenue. 

There were about six people present at the time, including defendant.  Defendant was a member of

the Latin Kings.  The victim was believed to be a member of the Milwaukee Kings.  The Latin Kings

and the Milwaukee Kings were rival gangs.  Ramon Marquez was the chief enforcer of the Latin

Kings.            

Around 2 a.m. on May 8, 1993, the victim came into the area near 1325 North Homan

Avenue, at which point Marquez punched the victim in the face.  "Everybody," including defendant, jumped on the victim and started to beat him.  Gonzalez further testified that defendant punched the victim in the rib area and was  beating  him along with the other "guys."  Gonzalez testified that

defendant and the other offenders were "trying to kill" the victim.  The victim fell to the ground and

defendant kicked the victim while he was on the ground.  After about three minutes, everybody split up.  Marquez ran across the street and got a gun.  When Marquez came back, the victim was trying to get away and Marquez shot him repeatedly.  Gonzalez further testified that he did not participate in the offense.  When Marquez threw the first punch, Gonzalez was about 40 feet away from the victim.  Gonzalez was able to observe what was going on because the area was illuminated by streetlights and by lights from a nearby building.

The victim died as a result of multiple gunshot wounds.  An autopsy revealed seven entry

wounds and one exit wound.  Four bullets were recovered from the victim's body.  In addition, there were scraping abrasions on the victim's forehead and cheeks, and there was swelling on the victim's lip.  Dr. Choi, a forensic pathologist, testified that the abrasions and swelling could have been caused by the victim being punched or kicked, or by the victim falling down and scraping his body on the sidewalk.

Several years later, Gonzalez became a member of the Latin Kings.  Gonzalez testified that

in 1996 he was present when Marquez had a conversation with some members of the Latin Kings

about this case.  Marquez told his fellow gang members that they should not talk to the police. 

Marquez warned that if anybody gave any statement or any clues, "something would happen to them."  
On November 11, 1996, Gonzalez spoke to the police about this case.  Initially, Gonzalez did not tell the police what he knew about this case because he was afraid of Marquez.  However,

Gonzalez's conscience "caught up" with him, and he decided to cooperate with the police.  Gonzalez told the police what he knew about the offense, and he identified a photo of defendant as one of the persons who had been involved in the offense.

Jeremiah Perez, a codefendant charged with first degree murder in this case, also testified at trial.  Perez explained that, in exchange for his truthful testimony, he expected to receive a 10-year sentence for second degree murder, a two-year consecutive sentence for a pending drug case, and a one-year concurrent sentence for another pending drug case.  Perez testified that in May of 1993 he was a member of the Latin Kings street gang.  Perez had known defendant by the name "Mexican."  On the morning of May 8, 1993, Perez was smoking cannabis and drinking beer with Marquez. 

Marquez said, "let's go get the M.K."  Perez went over to Evergreen and Homan and saw the victim against the wall of a building surrounded by five or six men, including the defendant.  Perez testified

that he and Marquez walked up and "just started beating on the guy" and everybody began to hit and

kick the victim.  According to Perez, defendant kicked the victim about 15 to 20 times while the

victim was on the ground.  About five minutes later, Marquez went to get a gun and everybody

scattered.  Marquez then approached the victim and began to shoot the gun at the victim.

Shortly after this offense, Perez got shot in the head in an unrelated offense.  Although the

bullet did not penetrate his brain, Perez testified that the shooting affected his memory.  In 1995, Perez spoke to the police about this case.  Sergeant John McMurray testified that, during the course of the investigation, Perez gave the police approximately 10 names of possible suspects, including the name "Mexican."

After speaking with both Perez and Gonzalez, the police determined that the person Perez and Gonzalez had known as "Mexican" was defendant, Rodolfo Nunez.  The police attempted to locate defendant, but their efforts were unsuccessful.  In June of 1997, the police obtained a warrant for defendant's arrest.  In August of 1998, the police were informed by officials from Kentucky that

defendant was being held in custody on the warrant.  The police  brought defendant back to Chicago.

After the State rested its case, the trial court denied defendant's motion for a directed finding.  Defendant testified that, in 1988, he joined the Latin Kings when he was 17 years old.  Defendant belonged to the Hirsch and Spaulding section of the Latin Kings.  According to defendant, members of the Latin Kings sometimes put tattoos on their bodies to show their affiliation.  Defendant testified about a number of tattoos he had on his body, including the name "Mexican."

Defendant testified that he was not an active member of the Latin Kings at the time of the offense, but he still associated with some members of the gang.  Defendant became inactive with the Latin Kings after he was placed on misdemeanor probation for a gun case in March of 1993. 

Defendant testified that he did not know where he was on May 8, 1993, at the time of the crime,  between midnight and 4 a.m.  He testified that he was not in the vicinity of Homan and Evergreen and  denied any involvement in the beating or murder of the victim.  According to defendant, he did not hear about the offense until several days after it had occurred.  Defendant testified that he moved to Kentucky in 1994, but he went back to Chicago every couple of months.  In 1995, defendant became a permanent resident of Kentucky.  In 1997, defendant opened a restaurant in Kentucky, and the

restaurant received an award.

The trial court concluded that defendant was an initial participant in the offense.  It was the opinion of the trial court that Gonzalez and Perez testified more credibly than defendant.  The trial

court found defendant guilty of the lesser included offense of aggravated battery and stated:

"[T]here is sufficient evidence to find Mr. Nunez guilty of aggravated battery although that evidence falls short of finding him guilty of the crime of first degree murder for which he was charged.  I will note that the way the charging instrument in the indictment reads, they talk about aggravated battery as the felony that is the predicate upon which this first degree murder occurred.  They talk about him not only being shot, but being beaten with hands and feet which is also a contributing cause of his death ***.  Although I do not find that he is responsible for first degree murder, I do believe from the evidence that I've heard that the Government has met their burden to prove the lesser included offense of aggravated battery.  And he is so found

guilty."

  

After considering aggravation and mitigation, the trial court sentenced defendant to 54 months of imprisonment.

ANALYSIS

The issue in this case is whether defendant's conviction for aggravated battery violates the statute of limitations.  The statute of limitations for aggravated battery is three years, while murder

has no statute of limitations.  This court has consistently held that the charging document must allege that the crime was committed at some time before the return of the indictment or the filing of the

information and within the period fixed by the statute of limitations. 
 People v. Day
, 404 Ill. 268

(1949).  In the alternative, facts may be alleged and proved which by reason of the provisions of the

Criminal Code of 1961 (the Code) would toll the running of the statute.  720 ILCS 5/3-5, 3-6, 3-7, 3-8 (1996).

When an indictment or information is attacked for the first time on appeal, it is sufficient that

the indictment or information "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future

prosecution arising out of the same conduct."  
People v. Gilmore
, 63 Ill. 2d 23, 29 (1976); 
People v. Pujoue
, 61 Ill. 2d 335, 339 (1975).  The determinative factor is whether the defect in the

information or indictment prejudiced the defendant in preparing his defense.  If, however, the

information or indictment is attacked before trial, the information must strictly comply with the

pleading requirements of the Code.  720 ILCS 5/3-5, 3-6, 3-7 (1996);  
People v. Smith
, 99 Ill. 2d 467 (1984); 
Gilmore
, 63 Ill. 2d at 29; 
Pujoue
, 61 Ill. 2d at 339.  Here, the indictment was attacked for

the first time after the State rested but before the defense presented its case.

In 
People v. Strait
, 72 Ill. 2d 503 (1978), the supreme court recognized the long-established rule "that if the indictment or information shows on its face that the offense was not committed within the period of limitation [then] facts must be averred which invoke one of the exceptions contained

in the statute."  
Strait
, 72 Ill. 2d at 504-05.  In this case the indictment alleged that the criminal

conduct occurred in 1993, while defendant was indicted in 1998.  The statute of limitations for

aggravated battery is three years and the indictment failed to allege any facts that would toll the

running of the statute of limitations. 

In 
People v. Toolen
, the indictment, filed on January 29, 1982, alleged that the criminal conduct occurred "between January 1, 1979 and October 1980."  
People v. Toolen
, 116 Ill. App. 3d 632 (1983).
  The first month of that period was beyond the limitations period, and no facts in the

indictment established that the last of any series of acts occurred later than that first month. 

Consequently, the appellate court dismissed the indictment because the State failed to allege facts

giving rise to the exception for a series of acts.  
Toolen
, 116 Ill. App. 3d at 653. 

Here, during trial, defense counsel did not move to dismiss the two murder counts based on

aggravated battery in a pretrial motion.  Defense counsel first moved that these two counts of the indictment be dismissed for violating the statute of limitations after the State rested.  The trial court admonished defense counsel regarding the statute of limitations issue as follows:

"That is a matter that you should have brought to me in a pretrial motion to dismiss the indictment.  There's a remedy for what you're

claiming is wrong, and the remedy is a motion to dismiss the indictment.  And you didn't do that."

Defense counsel responded: 

"Well I don't believe I waived it ***.  However, to file a pretrial

motion on something like that would have broken the term."

Defense counsel in support of the motion to dismiss cited 
People v. Munoz
, 23 Ill. App. 3d

306 (1974), and based on that case defense argued as follows:

"[I]t is a fundamental rule of criminal pleading that an indictment which on its face shows that the offense charged is barred by the statute of limitations is wholly insufficient at law.  The indictment, therefore, must reflect that the offense was committed on a date within the period of limitations.  When a statute extends a statute of limitations in certain cases and the offense is alleged to have been committed on a date not within the general limitation period, the indictment must assert the facts avoiding the bar of limitations statute."  

Defense counsel argued that aggravated battery was barred by the statute of limitations and the

indictment failed to allege facts that would avoid the bar of the limitations statute.  Defense counsel also relied on the case of 
People v. Strait
, 72 Ill. 2d 503 (1978), for the same proposition. 

Defendant's motion to dismiss based on a violation of the statute of limitations was denied.  After

defendant was convicted of aggravated battery defense counsel raised the statute of limitations

argument in a written posttrial motion, which was also denied by the trial court.

We find the case of 
People v. Brocksmith
, 162 Ill. 2d 224 (1994), instructive.  In 
Brocksmith
, defendant was charged by information with one count of felony theft by deception.  Following trial,

defense counsel successfully tendered a jury instruction on the included offense of deceptive practices,

a misdemeanor.  Brocksmith was convicted of the misdemeanor offense.  The appellate court held that defense counsel provided ineffective assistance of counsel by tendering an instruction on a time-barred offense without informing defendant that the statute of limitations had run on the offense.

The supreme court affirmed the appellate court and concluded as follows: 

"In the present case defense counsel, rather than defendant, made the ultimate decision to tender a lesser included offense instruction on deceptive practices.  We believe that this decision ultimately belonged to defendant, and defendant's conviction must therefore be reversed.  Because we base our decision on this ground, we need not consider the appellate court's finding that the failure to discuss with defendant the statute of limitations on deceptive practices constituted ineffective assistance of counsel.

Res judicata
 prevents defendant from being retried on the charge of theft by deception.  Further, remand for a new trial on the charge of deceptive practices would be inconsistent with our findings here.  Defendant was improperly subjected to additional criminal liability when defense counsel wrongfully tendered an instruction on deceptive practices without defendant's consent; remand for a new trial on the charge of deceptive practices would perpetuate that error.

The charge of deceptive practices, in any event, is barred by the

statute of limitations.  Defense counsel's waiver of the statute of

limitations cannot be deemed effective where defense counsel did not have the right to waive the limitation.  ***." 
 Brocksmith
, 162 Ill. 2d at 229-30. 

The concurring opinion, in referring to the statute of limitations, also agreed that "defendant cannot

be retried on the lesser included offense of deceptive practices due to the statute of limitations." 

Brocksmith
, 162 Ill. 2d at 234.  
Brocksmith
 addressed the issue of the effect of tendering a jury instruction on a lesser included offense that could not have been charged because it was barred by

the statute of limitations.  While here there was no jury trial, the trial judge after a bench trial found the defendant guilty of a lesser included offense, aggravated battery, which could not have been

charged because it was barred by the statute of limitations.

We are mindful that the murder statute has no statute of limitations; however, the applicable

limitations period for aggravated battery is three years.  Defendant was charged with two counts of

murder and two counts of felony murder based on aggravated battery on October 21, 1998. 

Defendant was not found guilty of murder, but the trial court found defendant guilty of the lesser

included offense of aggravated battery.  The lesser included offense of aggravated battery occurred

on May 8, 1993, more than five years before the indictment in this case.     

As previously noted, defense counsel argued, after the State rested its case, that the felony

murder charges based on aggravated battery should be dismissed because they violated the statute of limitations.
  Neither defendant nor defense counsel requested the trial court to consider finding defendant guilty of the lesser included offense of aggravated battery.  Defense counsel did not

contend that defendant was guilty of the lesser included offense of aggravated battery.  
The defense theory of the case was that defendant was not involved in the murder of the victim.
  Defendant

testified that he was not present and had nothing to do with the beating and death of the victim. 

Consistent with that testimony and that theory of the case at the close of the defense case, defense counsel argued:

"I don't believe the evidence that you've heard in this case says that Mr. Nunez was there ***.  This isn't the guy who was involved in this beating and the shooting, Judge.  He wasn't there.  And I would ask that you enter a finding of not guilty."

Defense counsel's decision not to pursue a lesser included offense was part of a cohesive trial

strategy and did not constitute ineffective assistance.  Moreover, this record indicates that neither

defendant nor defense counsel waived the statute of limitations as to aggravated battery.  Seeking a

finding of guilty on a lesser included offense might generally be considered a trial tactic.  However,

when that tactic requires waiver of the statute of limitations, the defendant must be consulted.  The

right to waive the statute belongs to the defendant.  The ABA Standards for Criminal Justice provide indirectly some guidance on this issue:

"It is also important in a jury trial for the defense lawyer to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury.  Indeed, because this decision is so important as well as so similar to the defendant's decision about the charges to which to plead, the defendant should be the one to decide whether to seek submission to the jury of lesser included offenses."  1 ABA Standards for Criminal Justice §4-5.2,

Commentary, at 4-68 (2d ed. 1980).

We believe the decision in a bench trial to have the judge consider a finding of guilty on a

lesser included offense is analogous to the decision to tender an instruction on a lesser included offense to the jury.  It is the defendant's decision as to whether to seek submission of an instruction on a lesser charge at the conclusion of the evidence in a jury trial. 
 Brocksmith
, 162 Ill. 2d at 229.  Where, as in this case, the lesser included offense of aggravated battery could not be charged because it was barred by the statute of limitations, it should be the defendant's decision as to whether to waive the statute and have the judge consider a finding of guilty on that lesser included offense in a bench trial.  In both situations these decisions directly impact on the defendant's potential loss of liberty regarding an initially uncharged offense.

Here, where neither defense counsel nor defendant requested the trial judge to consider

finding defendant guilty on the lesser included offense of aggravated battery, we find no waiver of

the statute of limitations regarding the lesser included offense of aggravated battery.  Without such

waiver, defendant was improperly subjected to criminal liability when the trial court entered a finding

of guilty on the lesser included offense of aggravated battery.

We are not saying that under the appropriate circumstances after a bench trial a trial judge

may not find a defendant guilty of a lesser included offense.  However, when the statute of limitations has expired on that lesser included offense, the trial court may find defendant guilty of that lesser

included offense only when the decision to submit the lesser included offense to the trial judge for consideration and thereby waive the statute of limitations is a product of the defendant's informed

consent.  The right to waive the statute of limitations is the defendant's right.  While asking the trial court to consider a lesser included offense might generally be considered a trial tactic, when that

tactic includes a decision to waive the statute of limitations, the record should reflect that the

defendant consulted with defense counsel about the decision to waive the statute of limitations and

agreed to the waiver.  

Defendant was acquitted on the charges of murder and felony murder; therefore, double

jeopardy prohibits retrial on these charges.  Further, defendant's conviction of the lesser included

offense of aggravated battery violates the statute of limitations.  

For the reasons previously discussed, the judgment of the trial court finding defendant guilty

of aggravated battery is reversed.

Reversed.

McNULTY, P.J., and COHEN, J., concur.