654 S.E.2d 611

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Daniel B. BINGMAN, Defendant Below, Appellant.**

**No. 33299.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2007.

Decided Oct. 26, 2007.

Dissenting Opinion of Justice Albright Oct. 29, 2007.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, R. Christopher Smith, Esq., Assistant Attorney General, Charleston, WV, for Appellee.

Rodger D. Curry, Esq., Curry & Swisher, P.L.L.C., Fairmont, WV, for appellant.

PER CURIAM.

This case is before the Court upon the appeal of the appellant, Daniel B. Bingman. The appellant appeals from the March 10, 2006, order of the Circuit Court of Gilmer County, which denied his motion for a new trial and sentenced him to a term of one year in the state penitentiary upon his conviction by a jury of one count of petit larceny in violation of West Virginia Code § 61–3–13(b). The appellant argues that the circuit court erred in instructing the jury on the lesser included misdemeanor offense of petit larceny during a felony prosecution for grand larceny where the indictment came more than one year after the offense. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court did not commit reversible error and accordingly, affirm the decision below.

## I.

### FACTS

In 1994, Virginia Woofter Rafferty died. At the time of her death, Ms. Rafferty lived in Akron, Ohio, but she also owned property in Gilmer County, West Virginia, which she left in divided shares to her various heirs. The appellant's mother, Ramona Bingman, owns two-sixths of the property through one-sixth heirship and a purchase of one-sixth of the property from Mr. Tommy Ross Gainer, the grandson of Ramona Bingman's aunt, Dora Gainor. The appellant's uncle, Roger Rafferty, owns three-sixths of the property, acquiring two-sixths by heirship and purchasing one-sixth from his cousin, Richard Woofter.

On his property near his home, Roger Rafferty owned and kept various items of farming equipment including a five-foot-tiller, a four-foot brush hog, a potato plow, a four-row-cultivator, and a boom pole. According to Mr. Rafferty, he purchased this equipment from Lemon's Tractor Supply solely on his own with no money from any heirship property.

On January 31, 2002, unbeknownst to Mr. Rafferty, the appellant procured the farm equipment and sold it for $500 to Gerald and Shirley Ball of Grantsville, West Virginia. At the time of the sale, the appellant represented himself to the Balls by another name, Jim West. Mr. Bingman explained that all of his adult life he had been in the entertainment business, mostly working as an on-air radio personality, and that he had always used the name "Jim West." He explained that using a pseudonym is a very standard practice in the radio industry and he was not attempting to mislead the Balls with regard to his identity.

On April 16, 2002, Mr. Rafferty reported his farm equipment missing to Sergeant Larry Gerwig of the Gilmer County Sheriff's Department. Sergeant Gerwig conducted an

investigation, and Mr. Ball agreed to return the equipment to the sheriff due to the controversy. The Balls never received the $500 from their initial purchase of the equipment and Mr. Ball died prior to the appellant's trial. Subsequently, the appellant was indicted for grand larceny for taking the farm equipment and selling it.

During trial, Ms. Marilyn Matheny, a partner of Lemon's Farm Equipment, valued the equipment to be approximately $1,200. On December 14, 2005, the jury found the appellant guilty of petit larceny in violation of W.Va.Code § 61–3–13(b), the lesser-included offense of grand larceny, a violation of W.Va. Code § 61–3–13(a).[1] The circuit court then sentenced the appellant to one year in the state penitentiary. This appeal followed.

## II.

## STANDARD OF REVIEW

In Syllabus Point 1 of *State v. Paynter,* 206 W.Va. 521, 526 S.E.2d 43 (1999), we held, " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus Point 1, *Chrystal RM. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." We have further indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. *State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997). Thus, with these standards in mind, we consider the parties' arguments.

## III.

## DISCUSSION

■ As set forth above, the appellant contends that the circuit court erred by instructing the jury on the lesser included offense of

petit larceny. The appellant maintains that this case fits squarely within the rule found in *State v. Leonard,* 209 W.Va. 98, 543 S.E.2d 655 (2000), to the effect that one cannot be convicted of a lesser included misdemeanor in a felony prosecution where the indictment came more than one year after the offense. The appellant admits, however, that the true issue is whether the provisions of *State v. Boyd,* 209 W.Va. 90, 543 S.E.2d 647 (2000), regarding waiver of the statute of limitations by having the jury instructed on the misdemeanor apply. Syllabus Point 3 of *Boyd* provides:

> When a defendant is not indicted within one year of the date on which an offense is committed but requests the circuit court to instruct the jury on a time-barred lesser included offense, the defendant by that act waives the statute of limitations defense contained in W.Va.Code § 61–11–9.

■ The appellant points out that the sale of the farm equipment occurred on January 31, 2002, and that W.Va.Code § 61–11–9 provides: "A prosecution for a misdemeanor shall be commenced within one year after the offense was committed. . . ." In this case, Mr. Bingman was not indicted until March 4, 2003, more than one year after the offense. Then, that indictment languished for nineteen months until it was dismissed on October 25, 2004. The appellant was then indicted again on the same offenses on March 9, 2005. The appellant's trial was held on December 13 and 14, 2005, and he was found guilty of petit larceny, a misdemeanor, the lesser included offense to grand larceny, a felony. Thus, he maintains that his conviction for a misdemeanor was barred by the statute of limitations, while a conviction for grand larceny would not have been barred.

Conversely, the State contends that the appellant waived any right for this Court to

---

1. W.Va.Code § 61–3–13, provides:

(a) If a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and shall be fined not more than two thousand five hundred dollars.

(b) If a person commits simple larceny of goods or chattels of the value of less than one thousand dollars, such person is guilty of a misdemeanor, designated petit larceny, and, upon conviction thereof, shall be confined in jail for a term not to exceed one year or fined not to exceed two thousand five hundred dollars, or both, in the discretion of the court.

review this matter due to his defense counsel's failure to object to the jury instructions that gave the jurors the option to convict the appellant of the misdemeanor offense of petit larceny rather than the felony of grand larceny. The State further points out that the appellant took an active role in formulating the jury instructions and that his defense counsel actually offered an instruction on the lesser included offense. Thus, his failure to object and his actual involvement in formulating the instructions resulted in waiver and no error occurred. We agree.

In this case, the State charged the appellant with the felony offense of grand larceny for stealing farm equipment in violation of W.Va.Code § 61–3–13(a). Since there is no statute of limitations for the felony offense of grand larceny, there has never been any assertion by the appellant that prosecution for that offense was time barred. *See State v. Parsons,* 214 W.Va. 342, 353, 589 S.E.2d 226, 237 (2003). The problem, however, occurred during the time period when jury instructions were being proposed. It was at that time when the lesser included offense of petit larceny was added for the jury's consideration. As discussed above, the record reflects that the appellant's counsel was vigorously involved in establishing the instructions to be presented to the jury and even included the option of finding him guilty of the misdemeanor offense of petit larceny in the "[Appellant's] Proposed Jury Instructions."

The appellant's proposed instruction, which was given without objection, stated as follows:

As part of these instructions you were instructed as to each of the elements of the offense of Grand Larceny and the lesser included offense of Petit Larceny as charged in the indictment. The distinguishing feature between these two offenses is the value of the property alleged to have been taken and carried away. In that regard the value that must be established is the current market value of the property at the time it was alleged to have been taken. The owner of the property is generally a competent witness to establish its current market value at the time the property was taken, although other witnesses may also be competent witnesses on the issue of current market value.

Likewise, during a bench conference discussing the potential instructions to be presented to the jury, the appellant's defense counsel stated the following:

But I think that we ... somewhere uh, make uh, allowance uh, either as Instruction Number 1, or Instruction Number 2 for the uh, for the lesser included offense. I mean, we're, we're obviously, obviously think that you know, under Count 1, it could be grand larceny or petit larceny.

We believe that Syllabus Point 3 of *Boyd, supra,* is directly on point. In *Boyd,* identical to the appellant's situation, the defendant was not indicted within one year of the date on which his offense was committed, but requested the circuit court to instruct the jury on a time-barred lesser included offense. In Syllabus Point 3, we held specifically that "the defendant by that act waives the statute of limitations defense contained in W.Va. Code § 61–11–9." We concluded in *Boyd,*

The requested charge was obviously in the appellant's best interest. He requested the charge, was convicted under the charge, and benefited from the charge. He cannot now complain of the result. His actions constitute a waiver of the time limitation contained in W.Va.Code § 61–11–9. To hold otherwise would allow defendants to sandbag trial judges by requesting and approving an instruction they know or should know would result in automatic reversal if given. "After a guilty verdict has been returned based on the requested instruction, defense counsel cannot be allowed to change legal positions in midstream and seek a reversal based on that error."

(Citation omitted).

In this case, the appellant was involved with the formation of instructions from the very beginning and even proposed an instruction for the lesser included offense of petit larceny to be provided to jurors. The appellant's counsel clearly had a choice in whether or not this instruction would be included and the record reflects that he did not object in any manner to the inclusion of this instruction. Moreover, the decision to

include the lesser included offense could have been a strategic decision on the part of the appellant's counsel. He may have felt that jurors were going to convict his client of the felony of grand larceny. With that in mind, a reasonable attorney could have concluded that the inclusion of the lesser included offense of petit larceny would have allowed for the possibility of the jury convicting the appellant of a misdemeanor, which is a better alternative than a felony conviction of grand larceny. Consequently, having reviewed this issue in its entirety, we find no violation of the appellant's rights due to the inclusion of the instruction for the lesser included offense of petit larceny.

The appellant also maintains that there was insufficient evidence to support his conviction. He claims that the only evidence that the farm equipment was owned solely by Mr. Rafferty was his testimony. The appellant contends that the farm equipment was his and that it was purchased with Virginia Rafferty's money and that Mr. Rafferty did not have the money to purchase that equipment. Thus, the appellant argues that he was entitled to treat this equipment as heirship property.

■ In Syllabus Point 1 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), we held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Moreover, as this Court made clear in Syllabus Point 3 of *Guthrie,*

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution

and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . .

■ In the case at hand, we believe there was more than enough evidence for a rational trier of fact to find the appellant guilty of this offense beyond a reasonable doubt. It was established at trial that Mr. Rafferty owned three-sixths of the heirship property in question where the farm equipment was located. Evidence was further presented that Mr. Rafferty had actually purchased the farm equipment at Lemon's Tractor Supply from his own money and not from any heirship money. Mr. Rafferty also testified that the equipment in question was solely his property and that he did not give any share of it to any of his family members. Thus, in consideration of all of the evidence presented, a rational trier of fact could have concluded that the evidence established that the appellant sold equipment purchased exclusively by his uncle, Mr. Rafferty, that was situated on land owned by Mr. Rafferty. Thus, in this case, we find the evidence was sufficient to prove beyond a reasonable doubt that the appellant did commit petit larceny. We consequently affirm the circuit court's decision.

## IV.

### CONCLUSION

Accordingly, for the reasons stated above, the final order of the Circuit Court of Gilmer County entered on March 10, 2006, is affirmed.

Affirmed.

Justice STARCHER and Justice ALBRIGHT dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting.

(Filed Oct. 29, 2007)

I respectfully dissent from the opinion of the majority of this Court. Indeed, as the majority recognizes, this Court's decision in *State v. Boyd,* 209 W.Va. 90, 543 S.E.2d 647 (2000), specifically governs this case. However, in my judgment, *Boyd* is unabashedly wrong. Prior to *Boyd,* this Court had declared explicitly as follows:

> Where, in a criminal prosecution, a conviction for assault and battery is had under an indictment charging the defendant with the commission of a felony, under Code, 61–2–9, which indictment was not returned within one year after the offense charged in the indictment was committed, *the conviction is barred under Code, 61–11–9, and is void. . . .*

Syl. Pt. 6, in part, *State v. King,* 140 W.Va. 362, 84 S.E.2d 313 (1954) (emphasis supplied). The *King* precept remained steadfast and was applied in *State v. Leonard,* 209 W.Va. 98, 543 S.E.2d 655 (2000), a decision filed by this Court on the same day *Boyd* was filed. In *Leonard,* this Court stated: "Our decision in *King* joined an overwhelming majority of courts that hold a defendant cannot be convicted of a lesser offense upon a prosecution for a greater crime commenced after the statute has run on the lesser offense." 209 W.Va. at 101, 543 S.E.2d at 658.

Despite the *King* assertion that a conviction is void under the identified circumstances, the *Boyd* decision created an exception which permitted a conviction to stand where the defendant requested an instruction on the lesser-included offense. Specifically, syllabus point three of *Boyd* provides as follows: "When a defendant is not indicted within one year of the date on which an offense is committed but requests the circuit court to instruct the jury on a time-barred lesser included offense, the defendant *by that act* waives the statute of limitations defense contained in W.Va.Code § 61–11–9." (Emphasis supplied). The *Boyd* Court reasoned that "[t]o hold otherwise would allow defendants to sandbag trial judges by requesting and approving an instruction they know or should know would result in automatic rever-

sal if given." 209 W.Va. at 94, 543 S.E.2d at 651.

There is merit to that argument regarding legal sandbagging to the extent that the decision to request consideration of a lesser included offense could have been utilized as a trial tactic, with a defendant essentially hedging his bets by seeking the benefit of conviction of a lesser included offense rather than a felony, with the secondary plan to attack the conviction on a statute of limitations claim should the jury take the bait. In that situation, as recognized by *Boyd,* a defendant would essentially be petitioning for consideration of the lesser included offense and thereafter seeking reversal based upon his own invitation. Therein lies the problem identified in *Boyd.* The failing in *Boyd* is not in its identification of the issue but rather in its resolution.

The underlying inconsistency between introducing the possibility of conviction on a lesser included offense and thereafter professing the illegality of the conviction under the statute of limitations has been recognized by a myriad of courts dealing with this situation. In *People v. Nunez,* 319 Ill.App.3d 652, 253 Ill.Dec. 516, 745 N.E.2d 639 (2001), for instance, the court observed that "asking the trial court to consider a lesser included offense might generally be considered a trial tactic[.]" 253 Ill.Dec. 516, 745 N.E.2d at 646. However, "when that tactic includes a decision to waive the statute of limitations, the record should reflect that the defendant consulted with defense counsel about the decision to waive the statute of limitations and agreed to the waiver." *Id.*

> [W]hen the statute of limitations has expired on that lesser included offense, the trial court may find defendant guilty of that lesser included offense *only when the decision to submit the lesser included offense to the trial judge for consideration and thereby waive the statute of limitations is a product of the defendant's informed consent.* The right to waive the statute of limitations is the defendant's right.

*Id.* (emphasis supplied).

This same principle was acknowledged in *People v. Brocksmith,* 237 Ill.App.3d 818, 178

Ill.Dec. 536, 604 N.E.2d 1059 (1992). "While the proffering of jury instructions might generally be considered a trial tactic, when that decision includes a decision whether to waive a statute of limitation, the defendant must be consulted." 604 N.E.2d at 1066. The *Brocksmith* court specified that "[t]he right to waive the statute belongs to the defendant and *should not be assumed from the action of counsel* in this situation." *Id.* (emphasis supplied). An additional element in *Brocksmith* was the recognition that the act of waiving the protections of the statute of limitations "cannot be considered a sound trial tactic when defense counsel admittedly did not know that the period had expired. He cannot make a reasoned decision without knowing the facts. Nor can the defendant be deemed to have made a knowing waiver of the period." *Id.* The *Brocksmith* court concluded its analysis with the assertion that "[u]nder these facts, defendant was denied his constitutional right to effective assistance of counsel." *Id.*

In *Cowan v. Superior Court*, 14 Cal.4th 367, 58 Cal.Rptr.2d 458, 926 P.2d 438 (1996), the California court generated a comprehensive discussion of the intricacies inherent in this issue. The court initiated its analysis by examining the critical difference between waiver and forfeiture. "Over the years, cases have used the word loosely to describe two related, but distinct, concepts: (1) losing a right by failing to assert it, more precisely called forfeiture; and (2) intentionally relinquishing a known right. '[T]he terms "waiver" and "forfeiture" have long been used interchangeably.'" 58 Cal.Rptr.2d 458, 926 P.2d at 440. In the instance of the loss of the right to assert the statute of limitations, the correct principle was held to be waiver, rather than forfeiture.[1] To remove oneself from the protection of the statute of limitations, one must intentionally relinquish a known right. In *Cowan*, the court observed that the prosecutor was "concerned that if petitioner pleads guilty, he can later challenge the conviction in a habeas corpus petition and assert the statute of limitations." 926 P.2d at 443. The court replied that such "concern is understandable," but that its "holding should obviate that concern. A person who waives the statute of limitations, as petitioner seeks to do here, may not later attack the conviction on the basis of that statute of limitations." *Id.* The crucial issue is *how* the statute of limitations is waived. In that vein, the *Cowan* court proposed as follows:

> To avoid the problem that arose in this case, we remind trial courts and prosecutors that whenever a defendant seeks to plead guilty to, or a court considers whether to instruct the jury on, a lesser offense, they should determine whether there may be a problem with the statute of limitations regarding that offense. If so, the court should elicit a waiver of the statute as a condition of the guilty plea or giving the instruction. This should be an easy process. The record need merely reflect in some fashion that the defendant is aware that the offense is, or might be, time-barred, and the defendant has waived the statute of limitations.

*Id.* at 443–44. Quite simply, "[t]he court need merely inform the defendant in some fashion that the charge is, or may be, time-barred, and elicit a simple waiver of the bar." *Id.* at 441.

In a concurrence in *Cowan*, Justice Baxter further elucidated the discussion by agreeing with the majority's "conclusion that a defendant ought to be able to waive the statute of limitations and, with the prosecutor's consent, plead guilty to a time-barred lesser offense where the waiver is knowing, intelligent, and voluntary, is made for the defendant's benefit and after consultation with counsel," subject to the limitations of the majority opinion, and where the waiver does

---

1. *See Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 315, 504 S.E.2d 135, 142 (1998) (identifying components of establishment of waiver, including demonstrating that party has intentionally relinquished known right.); *Hoffman v. Wheeling Sav. & Loan Assn.*, 133 W.Va. 694, 713, 57 S.E.2d 725, 735 (1950) ("'A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights.'" (Citation omitted)). *Hoffman* also instructs that "[t]he burden of proof to establish waiver is on the party claiming the benefit of such waiver, and is never presumed." (Citation omitted); *see also Dye v. Pennsylvania Cas. Co.*, 128 W.Va. 112, 118, 35 S.E.2d 865, 868 (1945).

not handicap the defense of contravene a public policy. *Id.* at 444, Baxter, J., concurring.

In another concurrence, Justice Chin observed that "[t]o allow defendants to lose the protection of the limitation *accidentally* could mean that persons could languish in prison under judgments that could not have occurred had they merely thought of the statute of limitations in time." *Id.* at 445, Chin, J., concurring (emphasis supplied).

> In addition to being fair, requiring an express waiver of the statute of limitations makes practical sense. Unlike a forfeiture rule, which would imply a waiver on a silent record, requiring an express waiver would ensure a fully developed record. When a defendant seeks to plead guilty to, or have the court instruct on, a time-barred offense, the court, with the assistance of the prosecutor, should take a simple waiver. That way the record is protected. A defendant who expressly waives the statute of limitations cannot later claim he did not know of it. The forfeiture rule would leave the record undeveloped. Whenever the defendant was represented, i.e., most of the time, the defendant could later claim he did not receive effective assistance of counsel, a claim which would be plausible most of the time, meritorious much of the time, and difficult to disprove all the time.

*Id.* The concurrence recognized the very likely potential for an ineffective assistance of counsel claim and the ability, if not responsibility, of a court to avoid that probable result by straightforward action during the early stages of the proceedings.

> If a represented defendant pleads guilty to a time barred offense and thereby forfeits the statute of limitations, but later claims counsel was ineffective, on what basis could a court deny relief? Suppose the defendant requests and receives an instruction of a time barred lesser offense and is convicted of the lesser offense. Later he files a petition for writ of habeas corpus, claiming his attorney never discussed the statute of limitations with him, and if he had known the lesser offense was time-barred, he would never have agreed

to requesting the instruction. When the record is silent, the claim would be credible. It would have to be litigated and would often be found meritorious. On the other hand, a simple waiver on the record would settle the matter.

*Id.* at 445–46. The concurrence explained that "a forfeiture rule would lead inevitably to the development of an entirely new jurisprudence.... A new subspecialty of ineffective assistance of counsel claims would arise. That development would be neither desirable nor necessary. The simple expedient of taking a waiver will avoid the problem. A silent record aids no one." *Id.* at 446.

An identical conclusion was reached in *State v. Kerby*, 141 N.M. 413, 156 P.3d 704 (2007), wherein the New Mexico court held: "Based on our review of the various approaches, we hereby adopt the waiver approach and hold that the statute of limitations is a substantive right that may only be waived by a defendant after consultation with counsel, and only if the waiver is knowing, intelligent, and voluntary." 156 P.3d at 709. The *Kerby* court rejected the forfeiture approach not only because the protection should not be unintentionally lost but also because the forfeiture rule is "an exercise in futility." *People v. Williams*, 21 Cal.4th 335, 87 Cal.Rptr.2d 412, 981 P.2d 42, 45 (1999). As the *Williams* court explained:

> Defendants would usually gain indirectly by claiming ineffective assistance of counsel what a forfeiture rule would prevent them from gaining directly. A forfeiture rule would merely add a step to the litigation. Only those who admitted their guilt right away and did not request an attorney could never gain relief.

*Id.*

The *Kerby* court reasoned that "[i]f we adopted the forfeiture rule in the instant case, Defendant would have a compelling ineffective assistance of counsel claim because he would not have been convicted but for his attorney's failure to raise the statute of limitations defense." 156 P.3d at 710.

In jurisdictions with a forfeiture rule, in numerous cases involving similar facts, courts have granted post-conviction relief outright on the basis of ineffective assis-

tance of counsel or have remanded for an evidentiary hearing on the issue. Thus, if we adopted the forfeiture rule, we would expend judicial (and executive) resources addressing Defendant's ineffective assistance of counsel claim and ultimately delay the inevitable vacating of Defendant's convictions.

*Id.* (Citations omitted.) The attorney for the defendant in *Kerby* admitted that he failed to consult with the defendant about the statute of limitations because he did not recognize the issue. The court found that the defendant "did not knowingly, intelligently, and voluntarily waive this defense after consulting with his counsel" and vacated the defendant's convictions. *Id.*

The United States Supreme Court addressed this issue in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), and held that a defendant in a capital case may be required to waive the statute of limitations as a condition to having the trial court instruct the jury on a lesser included offense. The Court grappled with the issue of whether a defendant is entitled to the benefit of *both* a lesser included offense instruction *and* the defense of an expired period of limitations. The Court explained:

> If the jury is not to be tricked into thinking that there is a range of offenses for which the defendant may be held accountable, then the question is whether *Beck [v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) ] requires that a lesser included offense instruction be given, with the defendant being forced to waive the expired statute of limitations on those offenses, or whether the defendant should be given a choice between having the benefit of the lesser included offense instruction or asserting the statute of limitations on the lesser included offenses. We think the better option is that the defendant be given the choice.

*Id.* at 456, 104 S.Ct. 3154. "In this case, petitioner was given a choice whether to waive the statute of limitations on the lesser offenses included in capital murder. He knowingly chose not to do so." *Id.* at 457, 104 S.Ct. 3154. The trial court has explicitly detailed the statute of limitations issue di-

rectly to the petitioner, asking if he understood the ramifications of his decision, as follows:

> THE COURT: Do you understand that while the statute of limitations has run on the Court submitting to the jury lesser included verdicts representing the charges of second-degree murder and third-degree murder, manslaughter, that you who has the benefit of the statute of limitations can waive that benefit and, of course—and then have the Court submit the case to the jury on the first-degree, second-degree, third-degree and manslaughter.
>
> If you don't waive the statute of limitations, then the Court would submit to the jury only on the one charge, the main charge, which is murder in the first degree, and the sentencing alternatives are as [defense counsel] stated them. Do you understand that?
>
> MR. SPAZIANO: Yes, your Honor.

*Id.* at 457 n. 6, 104 S.Ct. 3154. The Supreme Court found that, under those circumstances where the defendant understood the consequences of his actions and refused to waive the statute of limitations, the trial court did not err in refusing to instruct the jury on the lesser included offenses.

The *Boyd* declaration, and consequently the conclusion of the majority herein, is contrary to the reasoned methodology employed by courts addressing this critical criminal right. *Boyd* dictates that the very act of seeking the lesser included instruction is a forfeiture of the rights afforded to a defendant under the applicable statute of limitations. End of inquiry. This restricted view fails to acknowledge that the protections afforded by the statute of limitations in this instance should not be deemed to have been abandoned in the absence of a knowing, voluntary, and intelligent waiver. Moreover, the ramifications of the application of the narrow *Boyd* rule conflict with the basic concepts of judicial economy. As recognized by several cases above, the potential for ineffective assistance of counsel claims is overwhelming where the *Boyd* rule is applied. Without the informed consent of the defendant, counsel's decision either for or against waiver could ultimately result in a claim of legal malpractice. The predictions of the

*Williams* court, examined above, would then come to fruition, and the forfeiture approach would properly be viewed as "an exercise in futility" which simply and unnecessarily "add[s] a step to the litigation." 87 Cal. Rptr.2d 412, 981 P.2d at 45. Whether viewed from the broad perspective of the fundamental rights of a criminal defendant or the more narrow determination of effective judicial management, the rule adopted by *Boyd* is defective. I therefore respectfully dissent from the application of the *Boyd rule* in this case, and I would reverse the Appellant's conviction.

I am authorized to state that Justice STARCHER joins in this dissenting opinion.