298 S.E.2d 246

**STATE of West Virginia**

v.

**Earl Robert HALL.**

**No. 15382.**

Supreme Court of Appeals of West Virginia.

Dec. 2, 1982.

---

Thomas N. Trent and Jerry Dove, Asst. Attys. Gen., Charleston, for appellee.

James H. Wolverton, Timothy R. Ruckman, Callaghan, Callaghan, Ruckman & Vaughan, Richwood, for appellant.

McHUGH, Justice:

The appellant, Earl Robert Hall, was convicted of fifteen counts, eleven felonies and four misdemeanors, of buying, receiving and aiding in the concealment of stolen property. The case is before this Court on appeal from an order of the Circuit Court of Nicholas County, West Virginia, entered on October 8, 1980, sentencing the defendant to serve five consecutive indeterminate periods of not less than one year nor more than ten years each on five of the felony convictions. The remaining six felony convictions, each being an indeterminate period of not less than one year nor more than ten years, as well as the four misdemeanor convictions each being a one year period, were to run concurrently with the five aforementioned consecutive sentences.

On this appeal the defendant assigns error in six different areas which will be considered in order: (1) the trial court erred in denying appellant's motion to suppress all items of property which were seized by the police pursuant to two search warrants issued on March 6, 1980, and March 7, 1980, and then allowing such items to be admitted into evidence; (2) the trial court erred in denying appellant's motion for a change of venue; (3) the trial court erred in permitting the owners of the stolen property to testify as to the value of such property; (4) the trial court erred in denying appellant's motion for a directed verdict at the conclusion of the State's evidence at trial because the prosecution failed to establish a *prima facie* case against the defendant; (5) the trial court erred in giving four of the jury instructions submitted by the State because the prosecution failed to introduce evidence which would justify such instructions; and (6) the trial court erred by sentencing the defendant on each of the fifteen counts upon which he was convicted because each count

constituted the same crime or offense for purposes of double jeopardy.

## I

## FACTS

### The Search Warrants

On the afternoon of March 4, 1980, Sgt. R.J. Adams of the West Virginia State Police in Summersville, West Virginia, received information from a confidential informant that a large quantity of tools and various items of construction equipment were lying on and around a certain farm in Nicholas County. In addition to the tools and construction equipment, the informant also viewed one to two thousand writing pens with Gilmer Fuel Company printed on them in a motor vehicle parked at the farm. Upon further stating that he was returning to the farm on the following day, Sgt. Adams requested the informant to obtain as much information as he could regarding those items.

On March 5, 1980, Sgt. Adams again spoke with the informant who repeated that he had seen the writing pens with Gilmer Fuel Company printed on them. The informant supplied new information concerning some clearance lights which were in a box with Alfab, Inc. of Smithsville, West Virginia, written on it. Upon receiving this information Sgt. Adams contacted the police in Gilmer County, concerning the pens, and Harrisville, West Virginia, concerning the lights. As a result of his contacts Sgt. Adams was informed that the described items were taken from Gilmer Fuel Company and Alfab, Inc. in recent thefts.

Upon gaining this knowledge Sgt. Adams, on March 6, 1980, appeared before a magistrate to obtain a search warrant. Sgt. Adams completed the affidavit and complaint for the search warrant. He listed which items were to be seized, i.e., hand tools, power tools, the clearance lights and the pens. He further stated that the items had been recently stolen and that a reliable informant had personally viewed the described items.

Upon being issued a search warrant by the magistrate, Sgt. Adams and other officers searched the farm on March 6, 1980. During this search a total of 138 items were seized, including the pens and clearance lights. During the March 6, 1980, search other items were viewed by Sgt. Adams which he suspected to be stolen as well. He noted these items and then contacted other police authorities throughout the State. Upon verifying his suspicions Sgt. Adams was issued a second search warrant for the farm. The second search took place on March 7, 1980, and approximately 36 additional items were seized.

### Venue

Following the searches an arrest warrant was issued for the appellant. On March 8, 1980, the appellant went to visit Elizabeth Hall (with whom the appellant was living, but apparently was not his wife) at the Summersville Memorial Hospital. As he was leaving, two state police officers approached him, whereupon the appellant ran into the nearby woods. A manhunt which involved 25 police officers and a helicopter thereafter ensued. The appellant, however, eluded the manhunt.

Two Nicholas County newspapers carried front page stories, along with pictures, of the manhunt. The articles further stated that a large amount of stolen property was recovered at the appellant's farm and that police authorities had issued warrants for appellant's arrest.

### Value

At trial, in order to determine the value of the stolen items, only testimony of the owners was offered by the State. Each owner testified when he purchased his property, what condition it was in, both when purchased and when stolen, and what it was worth in his estimation. Appellant offered no evidence to refute the owners' assigned values.

### Prima Facie Case

During the trial the prosecution offered two witnesses who testified that the farm was the residence of the appellant. The

first was Bradley Safreed who testified that he rented the farm to Earl and Elizabeth Hall in August or September of 1979. Mr. Safreed further testified that thereafter, on March 5, 1980, he had viewed the appellant on the property using some of the stolen items while Mr. Safreed was repairing a water line at the farm. The second witness was Harold Campbell who had been staying at the farm during February of 1980. He testified that he had known the appellant for six to eight years and that the appellant did in fact live at the farm. Mr. Campbell was not cross-examined by the defense.

### Jury Instructions

At the conclusion of trial, the State offered seven instructions to be given to the jury. The appellant objected to four of those instructions asserting that no evidence was offered at trial which would warrant the giving of such instructions.

### Multiple Punishments

Although the prosecution offered no evidence either linking the appellant to the thefts of stolen property found at the farm in Nicholas County or that he received or aided in concealing the stolen items on different occasions, the appellant was tried, convicted and sentenced on fifteen separate counts of receiving, or aiding in the concealment of stolen property.

### II

### Search Warrants

The appellant's first contention is that the trial court erred in denying his motion to suppress the items which were seized pursuant to two search warrants issued on March 6, 1980, and March 7, 1980, respectively. The appellant asserts that the March 6, 1980, search warrant was invalid for two reasons. First, the affidavit completed by Sgt. Adams failed to contain sufficient information to establish probable cause which would indicate the existence of criminal activity. Second, the warrant was overly broad in its description of the items to be seized, and as a result, the state police in its search confiscated items not particularly described in the warrant. The appellant further asserts that if the first search warrant was invalid then the second warrant is also invalid because it was issued to seize property observed during the previous illegal search.

The relevant statute to appellant's assertions is *W. Va. Code*, 62–1A–3 [1965] which reads, in part:

A warrant shall issue only upon complaint on oath or affirmation supported by affidavit sworn to or affirmed before the judge or magistrate setting forth the facts establishing the grounds for issuing the warrant. If the judge or magistrate is satisfied that there is probable cause to believe that grounds therefor exist, he shall issue a warrant identifying the property and particularly describing the place, or naming or particularly describing the person, to be searched.

The facts indicate that Sgt. Adams, after verifying with other police authorities in the State that the items named by the informant had been reported as stolen, went before a magistrate to obtain a warrant to search the farm rented by the appellant. Sgt. Adams testified at the suppression hearing that after being placed under oath by the magistrate he divulged to the magistrate the identity of the reliable informant and facts concerning his previous reliability. Sgt. Adams also informed the magistrate as to what property the informant personally viewed at the farm. Sgt. Adams further testified that he had personally contacted other police authorities who in turn informed him that such property had recently been stolen. Sgt. Adams supported his complaint under oath by an affidavit which particularly described the area to be searched, and what items were to be seized, i.e., "hand tools, power tools; clearance lights contained in a cardboard box with the name Alfab, Inc., Smithville, West Virginia, printed on the end of said box, pens with the name of Gilmer Fuel Company inscribed thereon. . . ."

■ The appellant relies heavily upon *State v. Stone,* 165 W.Va. 266, 268 S.E.2d

50 (1980) in which this Court reversed the defendant's conviction of receiving stolen property. In that case this Court examined probable cause as it related to the issuance of a search warrant.

To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and further, if there is an unnamed informant, sufficient facts must be set forth demonstrating that the information obtained from the unnamed informant is reliable.

Syl. pt. 1, *State v. Stone.*

The facts in *State v. Stone, supra,* were that a search warrant was issued to a state trooper upon the trooper's mere statement that he had "received reliable information from a confidential informant" that a motorcycle belonging to a named person was being concealed in a certain dwelling. No facts were ever elicited from the trooper by the magistrate concerning the reliability of the informant, nor had the informant personally viewed the stolen item on the defendant's premises. Upon searching the defendant's house the motorcycle was not found. However, during the search the troopers observed other items knowing them to be stolen. As a result of the search a second warrant was issued and the stolen items confiscated. This Court held that because probable cause was lacking for the first warrant the first search was illegal. We further held that "[p]roperty observed during an illegal or improper search cannot be subsequently seized pursuant to a lawful search warrant which was based solely upon observations made during the illegal search." Syl. pt. 2, *State v. Stone, supra.*

In the present case information was given by the sergeant to the magistrate concerning the reliability of the informant (including his identity), the personal observations of the informant and the trooper's independent verification that the items described by the informant had been reported as stolen. Thus, it is readily apparent that the deficiencies in the issuance of the first warrant in *State v. Stone, supra,* do not exist in the present case.

■ *State v. Stone, supra,* and *W.Va. Code,* 62–1A–3 [1965] require that a police officer set forth facts before the magistrate which indicate the existence of criminal activity. In the present case we find that the facts and other information given by the police officer adequately demonstrated the existence of probable cause which indicated criminal activity upon the appellant's part. Thus, we find appellant's contention to be without merit.

Appellant's second reason for asserting that the search was illegal is that the search was overly broad and the items seized were not sufficiently described in the warrant. In the present case the items in the warrant were described as "hand tools, power tools, clearance lights contained in a cardboard box with the name of Alfab, Inc., Smithville, West Virginia, printed on the end of said box, pens with the name of Gilmer Fuel Company, inscribed thereon...."

■ This Court in *State ex rel. White v. Melton,* 166 W.Va. 249, 273 S.E.2d 81 (1980) held that the "property to be seized must be described within the warrant itself or within the sworn complaint expressly made a part of the warrant by direct reference thereto. A search warrant should not be made a catchall dragnet." 166 W.Va. at 251, 273 S.E.2d at 83, quoting *State v. Greer,* 130 W.Va. 159, 164–165, 42 S.E.2d 719, 723 (1947). In the search which followed many different hand and power tools, e.g., a Black and Decker circular saw, a twenty-three piece ¾" Drive Socket Set, and a Craftsman ½" electric drill, were confiscated, along with the lights and pens.

The argument of counsel is that the warrant in this case was so overly broad in its description of the items to be seized that it constituted an unreasonable search.

A warrant containing a similar description of property was challenged in *State v. Walker,* 202 Kan. 475, 449 P.2d 515 (1969). In that case the description used to identify the property to be seized was "cooking utensils." The Kansas Court, without elab-

orating, held the description was sufficiently specific.

■ There can be no confusion under the terms of the warrant as to what was sought to be confiscated. Accordingly, this Court is of the opinion that the search warrant was proper.

Appellant's other assertion that the items seized during the second search should be suppressed is dependent upon the legality of the first search. Because the first search was proper this Court finds appellant's assertion to be without merit.

### III

### *Venue*

Appellant's second contention is that the trial court erred in denying his motion for a change of venue. The facts indicate that following the searaches an arrest warrant was issued for the appellant. On March 8, 1980, the appellant went to visit Elizabeth Hall at the Summersville Memorial Hospital. As he was leaving, two state police officers approached him, whereupon the appellant ran into the nearby woods. A manhunt which involved 25 police officers and a helicopter thereafter ensued. The appellant, however, eluded the manhunt. Two Nicholas County newspapers carried front page stories, along with pictures, of the manhunt. The articles further stated that a large amount of stolen property was recovered at the appellant's farm, and that police authorities had issued warrants for the appellant's arrest. Appellant asserts that as a result of the two newspaper articles "hostile sentiment" was aroused in Nicholas County against him, which prevented him from receiving a fair and impartial trial.

■ In *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982), this Court held:
[T]hat widespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial. In other words the defendant must show that he cannot get a fair trial because of the existence of extensive present hostile sentiment. In *State v. Boyd*, 161 W.Va. 385, 280 S.E.2d 669 (1981), we discussed the requirements announced in [*State v.*] *Pratt* [161 W.Va. 530, 244 S.E.2d 227 (1978)] and explained that the inquiry as to whether a defendant has established good cause for change of venue is not focused on the amount of pre-trial publicity, but on whether the publicity has so pervaded the populace of the county as to preclude a fair trial.

169 W.Va. at 180–181, 286 S.E.2d at 392–93.

■ "Whether a change of venue is warranted rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed, unless it clearly appears that such discretion has been abused." Syl. pt. 2, *State v. Gangwer, supra.*

■ In the present case the appellant has failed to show how the alleged "hostile sentiment" manifested itself. For example, appellant does not cite, nor does he even allege, any instance of prejudice by potential or actual jurors. In the absence of such showings the appellant has failed to show that he did not receive a fair trial. Accordingly, the trial court did not abuse its discretion in denying the motion for change of venue.

### IV

### *Value*

Appellant's third contention is that the trial court erred in permitting the owners of the stolen property to testify concerning the value of the items stolen from them.

The facts indicate that in order to determine whether a felony or misdemeanor had been committed by the appellant the sole testimony concerning the value of the stolen property offered by the State was given by the owners of the property. Each owner testified when he purchased the property, what condition it was in, both when purchased and when stolen, and what he paid for it when purchased, and its value when stolen. Moreover, the owners of the stolen items used their respective property every day, whether at home or work. Ap-

pellant's cross-examination of the owners was limited, in fact most were not cross-examined at all. Additionally, appellant offered no evidence of his own concerning the value of the stolen property.

■ This Court in *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976) stated that, "[n]ormally the owner of stolen property may testify as to its value because he is deemed qualified to give an opinion concerning the value of the things which he owns...." 226 S.E.2d at 43, citing *Commonwealth v. Warlow,* 237 Pa.Super. 120, 346 A.2d 826 (1975) and *State v. Anderson,* 20 Ariz.App. 309, 512 P.2d 613 (1973), *aff'd,* 110 Ariz. 238, 517 P.2d 508 (1973).

■ This is also the majority rule. *See, e.g., Vickers v. State,* 303 So.2d 700 (Fla. 1974); *State v. Smith,* 209 Kan. 664, 498 P.2d 78 (1972); *Turner v. State,* 486 S.W.2d 797 (Tex.Cr.App.1972). *See generally* 66 Am.Jur.2d *Receiving Stolen Property* § 23 (1973). Moreover, an owner's testimony concerning the value of his stolen property is not the sole determinative factor but rather is but one piece of evidence which the jury may consider when establishing the property's value. 346 A.2d at 829.

■ In this case proper foundations were laid by the prosecution and the testimony regarding value given by the owners was not improper. Appellant had the opportunity to thoroughly cross-examine each respective owner concerning the value of the stolen items, but he chose not to do so. Appellant also could have offered evidence of his own concerning the stolen property's value, but again he chose not to do so.

Accordingly, we find it was not error for the owners to testify concerning the value of their stolen property.

## V

### *Prima Facie Case*

Appellant's fourth contention is that the trial court erred in denying his motion for a directed verdict at the close of the State's case in chief as the State failed to establish a *prima facie* case of receiving or aiding in

the concealment of stolen property against the appellant.

The appellant was found guilty of violating *W.Va.Code,* 61–3–18 [1931] which reads:

If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted.

■ This Court, quoting *State v. McGraw,* 140 W.Va. 547, 550, 85 S.E.2d 849, 852 (1955), in *State v. Basham,* 159 W.Va. 404, 223 S.E.2d 53 (1976) reaffirmed the following standard which is to be used when examining the offense of receiving stolen goods:

The essential elements of the offense created by the foregoing statute are: (1) The property must have been previously stolen by some person other than the defendant; (2) the accused must have bought or received the property from another person or must have aided in concealing it; (3) he must have known, or had reason to believe, when he bought or received or aided in concealing the property, that it had been stolen; and (4) he must have bought or received or aided in concealing the property with a dishonest purpose.

159 W.Va. at 414, 223 S.E.2d at 59. Moreover, the foregoing elements may be established by circumstantial evidence, as well as by direct evidence. *State v. Mounts,* 120 W.Va. 661, 200 S.E. 53 (1938).

The first element of the offense requires that the property be stolen by some person other than the defendant. This is to prevent a person who is charged with theft of the property from also being charged with concealing it as well. *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). Because the appellant was not charged with the thefts of the property, nor was any evidence offered at trial which linked the appellant to the

thefts, it is implicit that the property was stolen by someone else.

The second element requires that the appellant must have aided in concealing the property. The facts indicate that the State introduced testimony of two witnesses who stated that the farm in Nicholas County where the stolen property was found was occupied by the appellant. The first witness was Bradley Safreed who testified that although Elizabeth Hall paid the rent, he rented the farm to Earl and Elizabeth Hall in August or September of 1979. The second witness, Harold Campbell, who had stayed at the farm during the month of February of 1980, testified that the appellant in fact lived at the farm.

Moreover, the facts indicate that the appellant was seen using numerous items of the stolen property prior to the search of the farm.

Thus, the evidence was uncontradicted that the appellant had rented the farm property, was actually living there and was personally observed using the stolen property. The statute does not require that it be shown that the appellant received the stolen items, but rather that he aided in the concealment of the stolen property.

It is not always necessary to physically hide stolen property before a person may be said to conceal it. It is just as much of a concealment if someone hinders the return of the property to its rightful owner. As the California Court held in *Williams v. Superior Court of Los Angeles County,* 81 Cal.App.3d 330, 343–44, 146 Cal.Rptr. 311, 319 (1978), "the offense of concealing stolen property ... consists of the act of intentionally secreting stolen property in violation of the affirmative duty to return it—or at least to disclose its whereabouts—to its rightful owner."

In the present case there was uncontradicted testimony that the appellant had rented the farm, was actually living there and was viewed using some of the stolen property. Around the farm nearly 200 pieces of stolen property were found. It is apparent from the facts that the appellant did not disclose the whereabouts of the stolen property to the proper authorities.

Nor did the appellant make any other inquiry concerning the stolen property which was later found on his property.

The final two elements require that the appellant must have known, or had reason to believe, that the property was stolen and the concealment was done with a dishonest purpose.

In most cases there is no direct testimony of the receivers actual belief. Proof thereof must therefore be inferred from the circumstances surrounding his receipt of the stolen property. His ... possession of recently stolen property, if unexplained or falsely explained, justifies the inference that he received it with guilty knowledge....

W. LaFave & A. Scott *Handbook on Criminal Law* § 93, at 686 (1972).

 Thus, it is apparent that the jury took a common sense approach when examining the final two elements. As discussed above, a rational person would make a diligent effort to inquire how the dozens of stolen items appeared on his property. At the very least a prudent person would contact the local authorities concerning the otherwise unexplained appearance of large numbers of diverse items on his property. In the present case the appellant made no such contact. Viewing the circumstances as a whole the jury had sufficient evidence to warrant the inference that the appellant did in fact have a "reason to believe" the items he aided in concealing were stolen and did so with guilty knowledge.

 While it has been held that the mere suspicion of guilt is not sufficient to sustain a conviction, *State v. Noe,* 160 W.Va. 10, 230 S.E.2d 826, 830 (1976), the rule more applicable in the present case is that:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evi-

dence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978).

The evidence offered at trial created more than a mere suspicion and was sufficient to "convince impartial minds of the guilt" of the appellant. Thus, appellant's argument that the prosecution failed to establish a *prima facie* case is without merit.

## VI

### *Instructions*

Appellant's fifth contention is that the trial court erred in giving four of the State's instructions because no evidence was presented at trial which would warrant the giving of such instructions.

 An instruction to the jury is proper if it is a correct statement of the law and if sufficient evidence has been offered at trial to support it. *State v. Painter*, 135 W.Va. 106, 63 S.E.2d 86 (1950). *See also State v. Shaffer*, 138 W.Va. 197, 75 S.E.2d 217 (1953).

 The trial court's first instruction was that the jury, in determining the question of the guilt or innocence of the appellant, could take into consideration the flight of the appellant after the commission of the crime. It is appellant's assertion that the instruction on flight was misleading. We disagree. This Court in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981) held "[t]hat evidence of flight is admissible upon a criminal trial is an almost universal rule." 167 W.Va. at 265, 280 S.E.2d at 79–80. We find that in the present case the instruction was proper and not misleading.

Appellant's objection to State's instructions numbers two, three and four was that no evidence was offered at trial which would prove that appellant had aided in concealing the stolen items. This issue was discussed earlier in this opinion, and we find appellant's arguments to be without merit.

## VII

### *Multiple Punishments*

At trial appellant was tried, convicted and sentenced on 15 separate counts of receiving and aiding in the concealment of stolen property. The stolen property had been found at his farm pursuant to the searches conducted on March 6, 1980, and March 7, 1980.

Appellant contends that the evidence offered at trial proved but one offense of receiving or aiding in the concealment of stolen property. Thus, as appellant asserts, to sentence him to multiple prison terms is violative of the constitutional ban on double jeopardy, which prohibits both multiple punishments for the same offense as well as multiple trials for the same offense.

It is well established that "the stealing of property from different owners at the same time and at the same place constitutes but one larceny." Annot., 37 A.L.R.3d 1407, 1410 (1971). This has come to be known as the "single larceny doctrine" to which the overwhelming majority of jurisdictions adhere. 37 A.L.R.3d at 1410.

The rationale of this doctrine is that such a taking is but one offense because:

[T]he act is one continuous act—the same transaction; and the gist of the offense being the felonious taking of the property, we do not see how the legal quality of the act is in any manner affected by the fact, that the property stolen, instead of belonging to one person is the several property of different persons. The offense is an offense against the public, and the prosecution is conducted, not in the name of the owner of the property, nor in his behalf—but in the name of the State, the primary object being to protect the public. . . .

*State v. Warren*, 77 Md. 121, 122, 26 A. 500, 500 (1893). *See generally* 37 A.L.R.3d at 1410–16.

The rationale behind the "single larceny doctrine" has also been applied to the crime of receiving stolen property.

While it is true that the stealing from different owners at different times, however slight the interval, constitute several offenses, a larceny of several articles may be committed by the same act, so as to constitute but one offense, though they are the property of different owners. *State v. Hennessey*, 23 Ohio St. 339 [1872]. And so with respect to receiving or concealing stolen property. Many articles stolen at different times from several persons may be received and concealed by the same act, and then there is but one offense.

*Smith v. State*, 59 Ohio St. 350, 358, 52 N.E. 826, 827 (1898).

Recent cases also support this position. In *Westmoreland v. State*, 151 Ga.App. 850, 261 S.E.2d 761 (1979) the trial court, after trying and convicting the defendant on two counts of receiving stolen property taken from two separate owners on the same day, sentenced him to two consecutive prison terms. The Georgia Appellate Court held:

[T]he evidence does not show that defendant was a party to the larcenies or that he received the property on different occasions. It only shows that defendant was in possession of the property at one time.... 'Under the facts of this case, there was but one offense of theft by receiving stolen property made out by the evidence. Therefore, the trial court erred in imposing consecutive sentences....' *Hardin v. State*, 141 Ga. App. 115, 118, 232 S.E.2d 631 [633 (1977)].

261 S.E.2d at 763.

In *Nelson v. State*, 628 P.2d 884 (Alaska 1981) the defendants were indicted for multiple felony and misdemeanor counts of receiving and concealing stolen property, each count consisting of items stolen from a different person. Upon being found guilty defendant was sentenced to concurrent prison terms. In remanding the Alaska Supreme Court held that the:

[E]vidence ... shows that [the] defendant[s] originally received the [stolen items] on a single occasion. Therefore, but one offense of receiving stolen property is shown, although the goods were stolen from different sources, and the duality of the sentences, even though they are ordered to run concurrently, cannot be permitted to stand.

628 P.2d at 897, quoting *People v. Lyons*, 50 Cal.2d 245, 275, 324 P.2d 556, 573 (1958).

 The facts in the present case indicate that at trial the prosecution offered no evidence concerning separate occasions when the appellant may have received the stolen property. The evidence showed only that the stolen property was concealed on appellant's farm. Thus, under the facts presented there was but a single offense of larceny by aiding in the concealment of stolen property supported by the evidence. The State failed to show that the appellant committed separate offenses under the statute. Because only one offense was proven, only one conviction and one sentence are warranted. Therefore, the trial court erred in imposing multiple sentences upon the appellant.[*]

 Under the provisions of *W.Va. Code*, 61–3–18 [1931] where the State proves that a defendant received or aided in the concealment of property which was stolen from different owners on different occasions, but does not prove that the defendant received or aided in the concealment of the property at different times or different places then such defendant may be convicted of only one offense of receiving or aiding in the concealment of stolen property.

Because we find no other error in the trial of this case, the appellant's conviction of one felony count of receiving or aiding

---

[*] We do not believe it is necessary in this case to discuss in detail the constitutional question concerning double jeopardy as it relates to multiple sentences. Instead, we resolve the issue by simply relying on the failure of proof by the prosecution of more than one offense. *See Westmoreland v. State, supra; Hardin v. State, supra;*

*People v. Lyons, supra. See generally* 37 A.L. R.3d at 1410. Other courts, however, have discussed the constitutional implications. *See, e.g., Nelson v. State, supra; Hearn v. State*, 55 So.2d 559 (Fla.1951). *See generally* 37 A.L.R.3d at 1410.

in the concealment of stolen property is affirmed. However, we remand the case to the circuit court for resentencing in accordance with the principles set forth herein. *See State v. Winston*, 170 W.Va. 555, 295 S.E.2d 46 (1982); *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982); Syl. pt. 3, *State ex rel. Powers v. Boles*, 149 W.Va. 6, 138 S.E.2d 159 (1964).

Affirmed in part; Reversed in part; Remanded with Directions.