# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0713

_____

FILED

May 8, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Petitioner

V.

GINA MARIE JERROME,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
Honorable James P. Mazzone, Judge
Criminal Action No. 13-F-7

AFFIRMED

_____

Submitted:  April 23, 2014
Filed:  May 8, 2014

Mark D. Panepinto
Wheeling, West Virginia
Attorney for Petitioner

Patrick Morrisey
Attorney General
Julie A. Warren
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

CHIEF JUSTICE DAVIS delivered the Opinion of the Court.

JUSTICES WORKMAN and LOUGHRY concur and reserve the right to file concurring opinions.

**SYLLABUS BY THE COURT**

1. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2. The theft of property from different owners at the same time and place may constitute one larceny. When considering whether the theft of several items of property from multiple victims constitutes one larceny under the single larceny doctrine, the controlling factor is whether the separate takings were part of a single scheme or continuing course of conduct. If so, the values of the property may be aggregated to determine the grade of the offense.

3. "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syllabus point 5, *Overton v. Fields*, 145 W. Va. 797, 117 S.E.2d 598 (1960).

4. The owner of stolen property may offer evidence of its value, at the time and place of the crime, based upon the property's fair market value. In addition to fair market value, other ways of showing the value of stolen property include the purchase price,

i

replacement cost, or the owner's reasonable belief as to its value. The weight to be given the

owner's testimony as to the value of the property is for the trier of fact to decide.

**Davis, Chief Justice:**

This appeal was brought by Gina Marie Jerrome ("Ms. Jerrome") from an order of the Circuit Court of Ohio County convicting her of grand larceny and sentencing her to prison for 1 to 10 years.[1]  In this appeal, Ms Jerrome assigns two issues as error: (1) allowing the theft of property taken from three purses to be treated as a single occurrence and (2) using non-fair market value evidence to establish the value of stolen items.  After a careful review of the briefs, appendix record submitted on appeal, and listening to the arguments of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts of this case involve four crime victims.  During the late evening hours of December 8, 2012, all of the victims were at a nightclub called "Generations."  The night club was located in Wheeling, West Virginia.

Two of the crime victims, Karen Jewell and Christopher Violet, were dating and went to the nightclub together.  Prior to their arrival at the nightclub, Ms. Jewell and Mr. Violet attended a Christmas party that was hosted by her employer, the law firm of Orrick,

---

[1]Counsel for Ms. Jerrome indicated during oral argument that she has been released on parole.

Herrington and Sutcliffe.[2] Several of Ms. Jewell's coworkers also came to the nightclub after the office Christmas party ended. Ms. Jewell and Mr. Violet joined her office coworkers at three tables in the nightclub. Ms. Jewell and several of her female co-workers placed their purses together on a table. It appears that shortly after their arrival, Ms. Jewell and Mr. Violet went on the dance floor and danced for two or three songs. Ms. Jewell went to the restroom after they stopped dancing. While in the restroom, Ms. Jewell discovered her purse in a trash can that was located in one of the restroom stalls. Everything of value was missing from her purse, including her wallet, credit cards, and two cell phones.[3]

One of Ms. Jewell's co-workers, an attorney named Lisa Bauer, was in the restroom when Ms. Jewell saw her purse in the trash can. Ms. Bauer helped Ms. Jewell search other trash cans to see if her wallet was in them. While the women searched trash cans, another woman entered the restroom and mentioned that someone else's purse was missing. At that point, Ms. Bauer left the restroom to retrieve her own purse. When Ms. Bauer got to the area where she had left her purse, she discovered that also was missing. Items of value in Ms. Bauer's purse included two cell phones and a medical inhaler.[4]

---

[2]Ms. Jewell was employed as a staff coordinator.

[3]One of the cell phones belonged to Mr. Violet. The battery in Ms. Jewell's cell phone was dead, so she was carrying Mr. Violet's cell phone.

[4]One of the cell phones was a work cell phone.

Around the time Ms. Jewell discovered her purse in a trash can, another woman in the nightclub, a college student named Sadie Atkinson, discovered that her purse was missing. Items of value in Ms. Atkinson's purse included an iPod and a debit card. Ms. Atkinson was the first person to inform the club's manager, Monica Thompson, that a theft had occurred. Ms. Thompson called the police to report that Ms. Atkinson's purse had been stolen. Ms. Thompson also informed the police that Ms. Jerrome had been in the nightclub earlier and that she believed Ms. Jerrome was responsible for the theft of the purse. In particular, Ms. Thompson indicated that she was suspicious of Ms. Jerrome because Ms. Jerrome acted strangely while she was at the nightclub. Ms. Thompson had observed Ms. Jerrome walking throughout the nightclub, but she did not appear to interact with anyone. Ms. Thompson stated that Ms. Jerrome appeared to be hiding something under one of her arms when she left the nightclub. Finally, Ms. Thompson informed the police that Ms. Jerrome had left the club with her boyfriend, Jacob Christopher. After Ms. Thompson called the police, Ms. Jewell and Ms. Bauer informed Ms. Thompson that their purses had been stolen.

When Ms. Jerrome and her boyfriend, Mr. Christopher, left the nightclub, they were accompanied by a third person. The three individuals drove to an apartment complex that apparently was not far from the nightclub. A police officer patrolling the area of the apartment complex saw a car parked improperly. The officer also saw Ms. Jerrome kneeling beside the car and digging into a bag. The police officer parked his car and approached Ms.

3

Jerrome and her companions to investigate what appeared to be suspicious conduct. The police officer saw Mr. Christopher toss something in the doorway of a building. Eventually, other police officers arrived. It was quickly learned that the police were looking for Ms. Jerrome and Mr. Christopher in connection with the purse thefts at the nightclub. The police retrieved the object that Mr. Christopher threw away and identified it as a credit card belonging to Ms. Jewell. The police also discovered other items that were stolen from the nightclub. Ms. Jerrome initially told the police that she found the purses at the club and that she was taking them to the police station.

On January 14, 2013, a grand jury returned a two count indictment against Ms. Jerrome and Mr. Christopher. The indictment charged them with two felony offenses, grand larceny and conspiracy, involving the theft of property belonging to Ms. Jewell, Mr. Violet, Ms. Bauer, and Ms. Atkinson. Ms. Jerrome's trial was severed from that of Mr. Christopher.[5] Ms. Jerrome was tried before a jury on March 19, 2013. During the opening statements, Ms. Jerrome's counsel informed the jury that she had stolen the items alleged in the indictment, but that she contested their value. Ms. Jerrome wanted the jury to convict her of the misdemeanor crime of petit larceny, a lesser included offense of grand larceny. During the trial, the State called nine witnesses, including the victims. The victims presented testimony that indicated the total value of the property stolen was in excess of $1000, which would

---

[5]The record does not indicate the status of the charges against Mr. Christopher.

satisfy the requirements for a grand larceny conviction. At the close of the State's case-in-chief, the circuit court dismissed the conspiracy charge because of insufficient evidence. Ms. Jerrome did not testify, but she did put on a case-in-chief wherein she called one witness. Ms. Jerrome's witness was qualified as an expert on the price of used cell phones. The expert placed a value on all the cell phones and the iPod that, collectively, did not equal $1,000, which would allow for only a petit larceny conviction. The jury returned a verdict finding Ms. Jerrome guilty of grand larceny. This appeal followed.

## II.

## DISCUSSION[6]

On appeal to this Court, Ms. Jerrome asserts two assignments of error. Each issue will be discussed individually.

### A. *Application of the Single Larceny Doctrine*

The first issue raised by Ms. Jerrome is that the circuit court erred in making a pretrial ruling that the State could aggregate the value of the stolen property to support the grand larceny indictment. This issue presents a question of law and requires an examination of our grand larceny statute. Our cases have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we

---

[6]We dispense with our usual practice of setting forth a general standard of review section because each of the issues presented in this case has its own unique review standard, which will be included in the relevant section.

5

apply a *de novo* standard of review."  Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).  *Accord* Syl pt. 1, *State v. Chic-Colbert*, 231 W. Va. 749, 749 S.E.2d 642 (2013) (per curiam).

We begin by noting that Ms. Jerrome was indicted on a charge of grand larceny under W. Va. Code § 61-3-13(a) (1994) (Repl. Vol. 2010).  The statute sets out the offense of grand larceny as follows:

> (a) If a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and shall be fined not more than two thousand five hundred dollars.

Under this statute, the theft of "goods or chattels" valued at one thousand dollars or more constitutes grand larceny.[7]  We note that W. Va. Code § 61-3-13(a) is silent as to how it is to be applied when larceny involves property belonging to and taken from multiple victims.  As a result of this silence, Ms. Jerrome contends that "there is no authority or reference to

---

[7]The crime of petit larceny is set out under W. Va. Code § 61-3-13(b) (1994) (Repl. Vol. 2010) as follows:

> (b) If a person commits simple larceny of goods or chattels of the value of less than one thousand dollars, such person is guilty of a misdemeanor, designated petit larceny, and, upon conviction thereof, shall be confined in jail for a term not to exceed one year or fined not to exceed two thousand five hundred dollars, or both, in the discretion of the court.

6

aggregating values of multiple owners of different property for the purposes of satisfying the grand larceny statute." The State disagrees with Ms. Jerrome and correctly points out that this issue is resolved by the common law "single larceny doctrine."

This Court first recognized the single larceny doctrine in *State v. Hall*, 171 W. Va. 212, 298 S.E.2d 246 (1982), in the narrow context of a prosecution for the offense of receiving stolen property. In *Hall*, the defendant was convicted of 15 separate counts of receiving stolen property. One of the issues the defendant raised on appeal was that he was guilty of only one offense, not 15 offenses.[8] This Court agreed with the defendant. In doing so, the opinion in *Hall* tersely explained the doctrine as follows:

> It is well established that the stealing of property from different owners at the same time and at the same place constitutes but one larceny. This has come to be known as the "single larceny doctrine" to which the overwhelming majority of jurisdictions adhere.

*Hall*, 171 W. Va. at 222, 298 S.E.2d at 256 (internal quotations and citations omitted). After examining the purpose and application of the doctrine, the court in *Hall* applied it to the crime of receiving stolen property:

> The rationale behind the "single larceny doctrine" has also been applied to the crime of receiving stolen property.
>
> While it is true that the stealing from different owners at different times, however slight

---

[8]Other issues were involved in the case that are not relevant to this appeal.

7

the interval, constitute several offenses, a larceny of several articles may be committed by the same act, so as to constitute but one offense, though they are the property of different owners. *State v. Hennessey*, 23 Ohio St. 339 [1872]. And so with respect to receiving or concealing stolen property. Many articles stolen at different times from several persons may be received and concealed by the same act, and then there is but one offense.

*Smith v. State*, 59 Ohio St. 350, 358, 52 N.E. 826, 827 (1898).
. . . .

The facts in the present case indicate that at trial the prosecution offered no evidence concerning separate occasions when the appellant may have received the stolen property. The evidence showed only that the stolen property was concealed on appellant's farm. Thus, under the facts presented there was but a single offense of larceny by aiding in the concealment of stolen property supported by the evidence. The State failed to show that the appellant committed separate offenses under the statute. Because only one offense was proven, only one conviction and one sentence are warranted. Therefore, the trial court erred in imposing multiple sentences upon the appellant.

*Hall*, 171 W. Va. at 222-23, 298 S.E.2d at 256-57.[9] *But see State v. Rogers*, 209 W. Va. 348, 362, 547 S.E.2d 910, 924 (2001) ("We decline to extend the single larceny doctrine to the circumstances of this case. There was proof adduced at trial that the property of each victim was taken at different times and in different places.").

It has been said that "[t]he rationale behind th[e] [single larceny doctrine] is that the taking of several articles at the same time from the same place is pursuant to a single intent and design." *J.R. v. State*, 982 N.E.2d 1037, 1039 (Ind. Ct. App. 2013) (internal quotations and citation omitted). *See also State v. Rasabout*, 299 P.3d 625, 630 (Utah Ct. App. 2013) ("The single larceny doctrine . . . evolved to limit charging discretion in the context of aggregating or separating theft counts based on their dollar values for the purpose of maximizing criminal liability."). As a general matter, the single larceny doctrine arises in three principal contexts:

---

[9]We went on to adopt the doctrine in Syllabus point 9 of *Hall*:

> Under the provisions of W. Va. Code, 61-3-18 [1931] where the State proves that a defendant received or aided in the concealment of property which was stolen from different owners on different occasions, but does not prove that the defendant received or aided in the concealment of the property at different times or different places then such defendant may be convicted of only one offense of receiving or aiding in the concealment of stolen property.

171 W. Va. 212, 298 S.E.2d 246.

9

> (1) whether a count in a charging document alleging that the defendant stole the property of several persons at the same time charges more than one offense and is therefore duplicitous; (2) whether a prosecution, conviction, or sentencing for stealing the property of one person bars, under double jeopardy principles, the prosecution, conviction, or sentencing for having stolen the property of another person at the same time; and (3) *whether, when the property of different persons is stolen at the same time, the values of the separate items of property may be aggregated to raise the grade of the offense or the severity of the punishment, to the extent that either is dependent on the value of the property taken.*

*Pitt v. State*, 832 A.2d 267, 283 (Md. Ct. Spec. App. 2003) (citation omitted) (emphasis in original).

The decision in *Richardson v. Commonwealth*, 489 S.E.2d 697 (Va. Ct. App. 1997), illustrates the application of the single larceny doctrine in the context of property stolen from more than one purse. In *Richardson*, the defendant entered a hospital and stole two purses that belonged to different hospital employees.[10] The purses were stolen from a nurses' station on the tenth floor of the hospital. Because the value of the contents of one of the stolen purses exceeded $200, the defendant was charged with grand larceny. However, as a result of the value of the property in the other purse being less than $200, the defendant also was charged with petit larceny. The defendant was convicted of both charges and appealed.

---

[10]The defendant committed other crimes while in the hospital, but those matters are not relevant to this discussion.

10

In the appeal, the defendant argued that, under the single larceny doctrine, he committed only one offense, not two offenses. The appellate court agreed as follows:

> In order for the single larceny doctrine to apply, the items stolen may, but do not have to, be part of the same bundle or parcel; it is sufficient if they be at the same location—that is on the "same table," or same room, or "same shop[.]" When the evidence supports a finding that the thefts were part of the same larcenous impulse or scheme and were part of a continuous act, a single larceny has occurred. The primary factor to be considered is the intent of the thief and the question to be asked is whether the thefts, although occurring successively within a brief time frame, were part of one impulse. The circumstances to be considered that will bear upon the issue are the location of the items stolen, the lapse of time between their taking, the general and specific intent of the thief, the number of owners, and whether intervening events occurred between the takings. Unless the evidence proves that two or more separate and discrete thefts occurred at separate times which were not part of the same larcenous impulse, then thefts from the same room are but a single larceny.
>
> . . . .
>
> As for the theft of the two purses from the tenth floor nurses' station, the evidence was not sufficient to prove that Richardson formed separate and distinct intentions to steal or to commit two separate thefts even though the purses were separated by approximately ten feet. The theft of the two purses occurred at approximately the same time, from the same room or location, and pursuant to a single impulse or design to steal items from that nurses' station. The fact that the purses were separated by ten feet and that the thief had to walk around a wall from the desk to the cabinet are not circumstances that break the continuity of the thief's single and continuing act of thievery. . . . Thus, the evidence is insufficient to prove two separate and distinct offenses. The only conclusion that a fact finder could reasonably draw from this record is that Richardson went to the tenth floor nurses' station intending to steal purses or other items

11

> of value and that he stole two purses during one continuous act
> or transaction.

*Richardson*, 489 S.E.2d at 700-01. *See also Wiglesworth v. State*, 249 P.3d 321, 326 (Alaska Ct. App. 2011) ("Alaska follows the 'single larceny' doctrine–the rule that the defendant's act of taking property belonging to different owners at the same time and place generally constitutes only a single crime of theft, even though this act of theft affects two or more victims."); *State v. Fillmore*, 927 P.2d 1303, 1308 (Ariz. Ct, App. 1996) ("Although Defendant does not use the term, his argument implicates the 'single larceny doctrine,' under which the stealing of property from different owners at the same time and the same place constitutes only one larceny."); *People v. Marquez*, 78 Cal. App. 4th 1302, 1308-09 (2000) ("This doctrine provides that when property properly belonging to different persons is taken at the same time and place, only one larceny will lie for the taking."); *Hayes v. State*, 803 So. 2d 695, 701 (Fla. 2001) ("[I]t was the fact that the taking of the property occurred at the same time, same place, and under the same circumstances that prohibited charging the defendants with multiple counts of larceny."); *Beaty v. State*, 856 N.E.2d 1264, 1271 (Ind. Ct. App. 2006) ("The single larceny rule states that when multiple items of property are taken at the same time and from the same place, there is but a single larceny, irrespective of whether the property belonged to one or several people."); *State v. McClanahan*, 836 P.2d 1164, 1166 (Kan. 1992) ("[A] series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done

pursuant to a single impulse and in execution of a general fraudulent scheme."); *Fair v. Commonwealth*, 652 S.W.2d 864, 867 (Ky. 1983) ("[T]hough items were owned by different people, were not of the same type, and were certainly not located in exactly the same place in the barn, the taking of the property at the same time and the same place [was] one larceny."); *People v. Adams*, 339 N.W.2d 687, 690 (Mich. Ct. App. 1983) ("The rule followed in Michigan and in nearly all other jurisdictions is that the taking of property from different sources at the same time and at the same place can constitute only a single larceny."); *State v. Morro*, 987 P.2d 420, 424 (N.M. Ct. App. 1999) ("[When] a thief takes several small amounts . . . from different victims at one time and place (as where, during a tea party downstairs, the thief searches the bedroom where several ladies' purses have been stowed, taking ten dollars from each of ten purses), the takings may, by the great weight of authority, be aggregated."); *State v. Marr*, 467 S.E.2d 236, 239 (N.C. 1996) ("[A] single larceny offense is committed when, as part of one continuous act or transaction, a perpetrator steals several items at the same time and place."); *Commonwealth v. Lockhart*, 296 A.2d 883, 885 (Pa. Super. Ct. 1972) ("The vast majority of jurisdictions wherein the issue of single or multiple larcenies has arisen have held that the stealing of property from a victim, but belonging to different owners, at the same time and the same place, constitutes but one larceny."); *State v. Waller*, 312 S.E.2d 552, 553 (S.C. 1984) ("The vast majority of cases considering this issue hold that the larceny of property from different owners at the same time and place constitutes one larceny."); *State v. Barker*, 624 P.2d 694, 695 (Utah 1981) ("[A]

13

single larcenous taking of property, whether owned by one or several individuals, will be treated as a single criminal offense."); *State v. Greathouse*, 56 P.3d 569, 581 n.2 (Wash. Ct. App. 2002) ("Where successive takings from several victims are pursuant to a single scheme, the takings may, by the great weight of authority, be aggregated.").

During oral arguments, counsel for Ms. Jerrome argued that there was no showing that the thefts occurred at the same time and place because the purse of Ms. Atkinson was in a different part of the bar than the purses of the other victims. The decision in *Richardson* is illustrative of the fact that the single larceny doctrine does not require that several thefts occur simultaneously. Such a requirement is illogical because there will always be some degree of time difference in the theft of multiple, unconnected items. Therefore, the meaning of "same time" for the purpose of the single larceny doctrine contemplates several thefts within a brief time period. Morever, *Richardson* is instructive as to the flexible meaning of the "same place" requirement of the single larceny doctrine. Under *Richardson,* theft of items located in different rooms on the same floor of a building constitutes the "same place."[11]

---

[11]Ultimately, the decision of what constitutes the same place and time is determined on a case-by-case basis.

14

In view of the foregoing authorities, we make clear and now hold that, the theft of property from different owners at the same time and place may constitute one larceny. When considering whether the theft of several items of property from multiple victims constitutes one larceny under the single larceny doctrine, the controlling factor is whether the separate takings were part of a single scheme or continuing course of conduct. If so, the values of the property may be aggregated to determine the grade of the offense.

In the instant proceeding, Ms. Jerrome filed a pretrial motion to dismiss the indictment on the grounds that the indictment wrongly aggregated the value of the items stolen in order to support a grand larceny charge.[12] The trial court entered an order denying the motion for the following reasons:

> In the instant case, Defendant is charged with stealing various items from several different persons within a small, finite span of time while at one location: Generations in Wheeling, WV. It also appears from the allegations that Defendant allegedly stole the various items, which includes multiple purses and their contents, within a small window of time, and the items allegedly stolen were in close proximity to each other just prior to the alleged theft. The Court notes particularly that Defendant's actions occurred (1) at one location, i.e., Generations in Wheeling, WV; (2) within a small and finite window of time; and (3) in a confined area of physical proximity; accordingly, the Court hereby FINDS and CONCLUDES that the Defendant's alleged crime arose out of a single occurrence. As a result, the Court is satisfied that the State's aggregation of the

---

[12]Ms. Jerrome challenged the indictment on other grounds that are not relevant herein.

15

> value of the items stolen in order to pursue a felony grand larceny charge with respect to Defendant's actions on the date in question, is appropriate in this case.

The trial court's pretrial findings are consistent with the requirements of the single larceny doctrine. Moreover, it is clear that the single larceny doctrine was supported by the evidence presented at trial. The trial evidence established that Ms. Jerrome stole items belonging to four people that were contained in three purses. The thefts occurred in the same nightclub and at the relative same time. Moreover, the evidence showed that the separate takings were part of a single scheme or continuing course of conduct by Ms. Jerrome. Consequently, the value of all of the items stolen was properly aggregated to prosecute Ms. Jerrome for grand larceny.

### B. Using Non-Fair Market Value Evidence to Establish the Value of Stolen Property

The next argument raised by Ms. Jerrome is that the trial court erred in allowing the victims to offer non-fair market value evidence of the value of the items stolen from them. Specifically, Ms. Jerrome contends that testimony by the victims as to the value of the iPod and cell phones was "based upon their replacement costs, or specific subjective values to the individual victims" or "cost-when-new." Ms. Jerrome contends this type of evidence was not admissible to prove the value of the items.

With few exceptions, this Court reviews evidentiary rulings made by a trial court for an abuse of discretion:

16

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995). We also have held that "[w]hether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. pt. 5, *Overton v. Fields*, 145 W. Va. 797, 117 S.E.2d 598 (1960).

Ms. Jerrome relies upon the decision in *State v. Bingman*, 221 W. Va. 289, 654 S.E.2d 611 (2007) (per curiam), for the proposition that the determination of the value of property in a larceny prosecution may be based only upon the fair market value of the property when stolen. Although the decision in *Bingman* quoted a jury instruction on larceny that was given by the trial judge in that case, the opinion was not concerned with the merits of the valuation component of the instruction. The issue the opinion addressed was the fact that the defendant offered an instruction which allowed the jury to consider the lesser included offense of petit larceny. This issue was relevant because the defendant was convicted of the lesser included offense, but contended that the statute of limitations had run on the lesser included offense. We rejected the contention because the defendant proposed the instruction which

17

contained the lesser included offense.  In sum, *Bingman* simply is not dispositive of what may or may not be considered as evidence to show the value of stolen property.

The State has cited to the decision in *State v. Hall*, *supra*, as guidance as to what type of evidence may be considered by a jury in deciding the value to place on stolen property. As stated earlier in this opinion, the defendant in *Hall* was convicted of receiving stolen property.  One of the issues the defendant raised was that the trial court erred in permitting the owners of the stolen property to testify concerning the value of the items stolen from them. This Court rejected the argument as follows:

> The facts indicate that in order to determine whether a felony or misdemeanor had been committed by the appellant the sole testimony concerning the value of the stolen property offered by the State was given by the owners of the property.  Each owner testified when he purchased the property, what condition it was in, both when purchased and when stolen, and what he paid for it when purchased, and its value when stolen. . . .
>
> This Court in *State v. Cokeley*, 159 W. Va. 664, 226 S.E.2d 40 (1976) stated that, "[n]ormally the owner of stolen property may testify as to its value because he is deemed qualified to give an opinion concerning the value of the things which he owns. . . ."  226 S.E.2d at 43, citing *Commonwealth v. Warlow*, 237 Pa. Super. 120, 346 A.2d 826 (1975) and *State v. Anderson*, 20 Ariz. App. 309, 512 P.2d 613 (1973), aff'd, 110 Ariz. 238, 517 P.2d 508 (1973).
>
> This is also the majority rule.  *See*, *e.g.*, *Vickers v. State*, 303 So.2d 700 (Fla.1974); *State v. Smith*, 209 Kan. 664, 498 P.2d 78 (1972); *Turner v. State*, 486 S.W.2d 797 (Tex. Cr. App.1972). *See generally* 66 Am. Jur.2d *Receiving Stolen Property* § 23 (1973). Moreover, an owner's testimony concerning the value of

18

his stolen property is not the sole determinative factor but rather is but one piece of evidence which the jury may consider when establishing the property's value. 346 A.2d at 829.

*Hall*, 171 W. Va. at 219-20, 298 S.E.2d at 253.

The decision in *Hall* is instructive on the general rule that "an owner is generally presumed as competent to testify to the value of his stolen property." *Sanchez v. State*, 101 So. 3d 1283, 1286 (Fla. Dist. Ct. App. 2012) (internal quotations and citation omitted). Although the victims in *Hall* testified as to the value of their property when purchased and when stolen, the opinion did not have to address the question of what type of valuation evidence was appropriate. The instant case posits that question. That is, in this proceeding, Ms. Jerrome contends that a victim of property theft cannot give evidence that values his or her property based upon replacement cost, cost-when-new, or a specific, subjective value. We disagree.

At the outset we will note that our larceny statute, W. Va. Code § 61-3-13, does not address the issue of how stolen property should be valued. As a general rule, "[t]he value of the items stolen means the market value of the property at the time and place of the crime." *Davis v. State*, 453 A.2d 802, 803 (Del. 1982). *See also State v. Boyken*, 217 N.W.2d 218, 220 (Iowa 1974) ("Ordinarily the criterion of value is the market value of the stolen property at the time and place of the theft."); *State v. Jacquith*, 272 N.W.2d 90, 92 (S.D. 1978) ("The

19

most widely accepted test is the 'fair market value' test. This test provides that the value to be proved is the fair market value at the time and place of the theft."). It has been said that "[t]he market value of stolen property is the price a willing buyer would pay a willing seller . . . at the time and the place that the property was stolen[.]" *United States v. Robinson*, 687 F.2d 359, 360 (11th Cir. 1982). Indeed, this Court long ago held that, "[u]pon a charge of grand larceny, the market value of the thing stolen (if it have a market value) as at the time and place of the theft must be proven beyond reasonable doubt." Syl. pt. 1, *State v. Boswell*, 107 W. Va. 213, 148 S.E. 1 (1929). In addition to showing the fair market value of stolen goods, it has been held that:

> Fair market value can be proven by evidence of the retail price or sale price, by testimony of an owner's opinion of value, or an expert opinion of value. No one method has been held to be exclusive. When the owner of the property is testifying as to the value of the property, he may testify as to his opinion or estimate of the value of the property in general and commonly understood terms.

*Ray v. State*, 106 S.W.3d 299, 301 (Tex. App. 2003). It also has been recognized that "where such market value cannot be reasonably determined other evidence of value may be received such as replacement cost or purchase price." *Cleveland v. State*, 461 P.2d 408, 409 (Nev. 1969). *See also Daniel v. State*, 439 So. 2d 206, 209 (Ala. Crim. App. 1983) ("We hold that the evidence 'as to what the stolen property cost at the time it was purchased by its owner,' and 'the serviceability of the property at the time it was allegedly stolen,' and 'the age of such property' furnished an adequate if not substantial basis for a finding by the jury that the

20

property in question was worth more than $100.”); *State v. Sorrell*, 388 P.2d 429, 431 (Ariz. 1964) (“Fair market value does not depend solely on wholesale or cost price. Evidence of retail price of stolen goods is admissible to show the value of the goods. The wholesale and retail prices, established by experts if necessary, may fix the range within which the jury may find fair market value.”); *People v. Moore*, 226 P.3d 1076, 1084 (Colo. App. 2009) (“[T]estimony on the purchase price of goods is competent evidence of fair market value only where the goods are so new, and thus, have depreciated in value so insubstantially, as to allow a reasonable inference that the purchase price is comparable to current fair market value.”); *State v. Browne*, 854 A.2d 13, 36 (Conn. App. Ct. 2004) (“[T]he owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy.”); *Ragsdale v. State*, 317 S.E.2d 288, 289-90 (Ga. Ct. App. 1984) (“Cost price of an item coupled properly with other evidence such as a showing of the condition of the item at the time of purchase and at the time its value is in issue may be admitted as an element upon which an opinion may be formed as to the item's value.”); *State v. Boyken*, 217 N.W.2d 218, 220 (Iowa 1974) (“In cases involving theft of new merchandise, other jurisdictions have held market value may be established by evidence of wholesale or retail values, or both.”); *Ladd v. State*, 87 So. 3d 1108, 1116 (Miss. Ct. App. 2012) (“[T]he owner of the merchandise may establish the value of the stolen property by testifying about what he paid for the stolen items. This type of testimony circumstantially

21

provide[s] a basis from which the jury could infer the value of the items."); *Monroe v. State*, No. 52788, 2010 WL 3341612, at*3 n.3 (Nev. July 30, 2010) ("This court has defined that standard as the fair market value of the property at the time and place it was stolen . . . [but] where such market value cannot be reasonably determined other evidence of value may be received such as replacement cost or purchase price."); *Smiles v. State*, 298 S.W.3d 716, 719 (Tex. App. 2009) ("[T]he owner may testify as to the fair market value of the property either in terms of purchase price or the cost to him of replacing the stolen property."); *Lester v. Commonwealth*, 518 S.E.2d 318, 322 (Va. Ct. App. 1999) ("The value of the stolen property is measured as of the time of the theft, and the original purchase price may be admitted as evidence of its current value."). *But see C.G. v. State*, 123 So. 3d 680, 682 (Fla. Dist. App. Ct. 2013) ("The evidence of value was 'not "obvious as to defy contradiction' and, therefore, was insufficient to establish the stolen property's value at the time of the theft.'"); *State v. Boyd*, 91 S.W.3d 727, 734 (Mo. Ct. App. 2002) ("Testimony from the owner of the motorcycle regarding its initial purchase price and the perceived 'perfect' condition of the motorcycle before the accident is too indefinite to constitute substantial evidence from which a jury could reasonably decide, beyond a reasonable doubt, that the market value of the [motorcycle] at the time and place of the crime was at least [$150].").

Moreover, "[t]he state does not need to prove the value of property with exactitude. . . . The state is required only to lay a foundation which will enable the trier [of

22

fact] to make a fair and reasonable estimate." *State v. Sherman*, 13 A.3d 1138, 1151 (Conn. App. Ct. 2011) (internal quotations and citation omitted). Ultimately, "[t]he weight to be given the owner's testimony as to value is for the trier of the fact." *People v. Henderson*, 238 Cal. App. 2d 566, 567 (1965) (citation omitted).

In view of the foregoing, we now hold that the owner of stolen property may offer evidence of its value, at the time and place of the crime, based upon the property's fair market value. In addition to fair market value, other ways of showing the value of stolen property include the purchase price, replacement cost, or the owner's reasonable belief as to its value. The weight to be given the owner's testimony as to the value of the property is for the trier of fact to decide.

In the instant proceeding, the testimony provided by the victims as to the value of their property when stolen by Ms. Jerrome was consistent with our holding. The following evidence was provided by the victims of Ms. Jerrome's larceny. Ms. Atkinson testified that she received the iPod from her parents as a gift, and that she believed it was valued at about $150 to $200. Ms. Jewell testified that her cell phone (iPhone 4S) was worth $500 when it was stolen, based upon the purchase price of a new phone at the time of trial. Ms. Jewell stated the phone was free under the cell phone plan she had, but that if she had not recovered her phone, she would have had to buy a new phone, because her plan was still in effect. Mr.

23

Violet testified that he bought his cell phone (Motorola Razr Maxx) from a friend for $450. He testified that it was worth $650 new.[13] Ms. Bauer testified that her work cell phone (Blackberry) was valued at $400. She stated that the value of her personal cell phone (Kyocera Rise) was $250. Ms. Bauer also valued her medical inhaler at $50 and her purse at $60.

As previously mentioned, Ms. Jerrome called an expert, Koury Jones, to testify as to the value of used cell phones. Mr. Jones testified that the value placed on the iPod by Ms. Atkinson was a "little high." He testified that Ms. Bauer's Blackberry cell phone was worth $35 and that her Kyocera Rise cell phone was worth $90. Mr. Jones also found that Mr. Violet's Motorola Razr Maxx cell phone was worth $160 to $200. Finally, Mr. Jones testified that Ms. Jewell's iPhone 4S cell phone was valued at $350 to $400.

"While the evidence was conflicting . . . on the value of the personal property taken, the jury had enough evidence before it to prove [Ms. Jerrome's] guilt beyond a reasonable doubt." *State v. Masters*, 179 W. Va. 752, 755, 373 S.E.2d 173, 176 (1988). The jury heard the testimony of the victims as to the value of their stolen property at the time of

---

[13]Ms. Jerrome contends in her brief, and her counsel restated during oral arguments, that Mr. Violet testified that the phone increased in value after he bought it. Mr. Violet did not provide such testimony. Mr. Violet simply testified that his purchase price was less than the original price.

the offense. They also heard the testimony of Ms. Jerrome's expert on the same issue. Based upon the verdict returned by the jury, convicting Ms. Jerrome of grand larceny, it is clear that the jury gave greater weight and credibility to the testimony of the victims and rejected the testimony of Ms. Jerrome's expert. Insofar as it was within the exclusive province of the jury to assess credibility and the weight of the evidence,[14] we will not disturb the jury's resolution of the conflicting evidence on the value of the stolen property. *See People v. Cox*, No. 299279, 2011 WL 6382095, at*2 (Mich. Ct. App. Dec. 20, 2011) ("It is the responsibility of the fact-finder to judge the credibility of witnesses and it was reasonable for the jury to find [the victim's] testimony credible and rely on it in determining the fair market value of the stolen property was more than $1,000.").

## III.

## CONCLUSION

In view of the foregoing, the circuit court's order convicting Ms. Jerrome of grand larceny and sentencing her to prison for 1 to 10 years is affirmed.

Affirmed.

---

[14]*See* Syl. pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.").